EVARISTO RÍOS FONTÁNEZ, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE BAYAMÓN, HON. F. GALLARDO DÍAZ, JUEZ, demandado.

Núm. 2077.

*Sometido:* 1 de junio de 1954. *Resuelto:* 9 de agosto de 1954.

*Benigno Dávila,* abogado del peticionario; *José E. Bosch Roqué,* abogado del opositor.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Evaristo Ríos Fontánez presentó en la Sala de Bayamón del Tribunal Superior una petición de Información de Domi-

nio, solicitando que se declarase justificado a su favor el dominio de una finca de 17.79 cuerdas, localizada en el barrio Maná de Corozal. Después de haberse celebrado los trámites preliminares y de haberse celebrado la vista correspondiente, y antes de haberse emitido resolución alguna, compareció en autos la señora Buenaventura Berríos, representada por un tutor, radicando un escrito de oposición a la aprobación del expediente de dominio, en que alegaba que como parte de la finca de 17.79 cuerdas había una parcela de 7 cuerdas que pertenecía a la sociedad de bienes gananciales constituída entre ella y su esposo José Alvarado Morales, y que siendo la opositora "sordomuda de nacimiento y no sabiendo leer ni escribir, nunca otorgó válidamente escritura o documento de valor legal alguno para enajenar las indicadas siete cuerdas siendo por lo tanto nula y sin valor legal alguno la venta extrajudicial que José Alvarado Morales le hubiere hecho a Antonio Flores y nula y sin valor legal alguno asimismo la venta hecha por Antonio Flores al peticionario Evaristo Ríos Fontánez."

El peticionario Ríos Fontánez radicó entonces una moción solicitando la eliminación o desestimación de la oposición de Buenaventura Berríos. El 18 de diciembre de 1953 el tribunal de Bayamón dictó una resolución declarando sin lugar la oposición radicada por Buenaventura Berríos, pero el 8 de enero de 1954, después de oír a las partes, el tribunal dictó otra resolución dejando sin efecto su resolución del 18 de diciembre de 1954. Hemos expedido un auto de *certiorari* a los fines de revisar esa última resolución del 8 de enero de 1954.

La cuestión planteada ante este Tribunal es al efecto de si es legalmente procedente el que, en un expediente de dominio, se presente y se considere una oposición como la radicada en el caso de autos. Como punto de partida a la determinación del problema, se hace preciso el considerar previamente la suficiencia intrínseca de los fundamentos expuestos en la petición.

La esencia de la oposición consiste en la alegación de que el título del peticionario en el expediente de dominio está viciado de nulidad porque una enajenación anterior de parte de la finca era nula, en vista de que uno de los vendedores en esa transferencia anterior carecía de capacidad para prestar su consentimiento, por ser sordomuda de nacimiento y no saber leer ni escribir. El art. 1215 de nuestro Código Civil dispone lo siguiente:

"Artículo 1215.—No pueden prestar consentimiento:

1. Los menores no emancipados.

2. Los locos o dementes *y los sordomudos que no sepan escribir*.

3. Las mujeres casadas, en los casos expresados por la ley." (Bastardillas nuestras.)

Un precedente legal de la disposición relativa a la sordomudez es la Partida 5a, título. II, ley 2a. (20 Scaevola 592), que dispone lo siguiente:

"Otrosi dezimos, que si quando le preguntassen, non respondiesse nada, mas que moviese la cabeza, o fiziesse otra señal alguna, non diziendo si, nin non, nin otra palabra ninguna, entonce, entonce non fincaría obligado. Ca tal obligación, como esta, que se faze por palabras, non se puede fazer por señales. E por ende dezimos, que los mudos, nin los sordos, non pueden obligarse, nin fazer tal pleyto como este. Porque los mudos, non pueden preguntar, nin responder. Nin los sordos, non pueden oyr, quando les preguntassen, como quier que podrían fazer los otros pleytos que se fazen por consentimiento."

Por analogía, en otros artículos del Código Civil se hace referencia a la sordomudez. El art. 25 dispone, en parte, que la sordomudez constituye una restricción de la capacidad jurídica. El art. 168 establece que están sujetos a tutela los "locos o dementes, aunque tengan intervalos lúcidos, y los sordomudos que no sepan leer ni escribir", ya que tales personas, bajo el art. 167, son "incapaces de gobernarse por sí mismos." (Véanse además los arts. 180 al 186.) El art. 950 dispone que "los sordomudos que supieren leer y escribir

aceptarán y repudiarán la herencia por sí o por medio de representantes conforme a ley. Si no supieren leer y escribir, la aceptará a beneficio de inventario su tutor . . ." El art. 630 dispone, en parte, que no podrán ser testigos en los testamentos los "totalmente sordos o mudos." El art. 659 señala que "los sordomudos y los que no puedan hablar, pero sí escribir, podrán otorgar testamento cerrado", observándose ciertas formalidades.

Bajo el art. 1215 del Código Civil, que cubre el campo de la falta de capacidad para contratar, la sordomudez, acompañada por el analfabetismo (como se alega en el caso de autos), constituye una incapacidad mental absoluta, de tipo natural, que produce la nulidad absoluta e inexistencia del consentimiento y del contrato, ya que envuelve la falta de aptitud real para consentir. (8(2) Manresa 386, quinta ed. rev.; 2 Castán 601, sexta ed. rev.; 20 Scaevola 600, 601.) [1]

De ser ciertas las alegaciones contenidas en la oposición radicada en el caso de autos por Buenaventura Berríos, sería absolutamente nula e inexistente la enajenación anterior de parte de la finca objeto del procedimiento. Por lo tanto, la oposición envuelve un ataque a la validez intrínseca del supuesto título o dominio del peticionario, y una impugnación a la validez esencial de la adquisición de la finca por el peticionario. El problema entonces consiste en determinar si tal impugnación debe dilucidarse dentro del propio expediente de dominio, o si debe ventilarse en un juicio plenario independiente. Tal alternativa está relacionada con otro dilema, al efecto de si el hecho en sí de radicarse tal oposición, en que se alegan vicios que producen inexistencia parcial del título, es suficiente para que se derrote o se desestime automáticamente la petición de información de dominio, para que el

---

[1] Se ha criticado la doctrina de la incapacidad mental absoluta de los sordomudos analfabetos, ya que se alega que ellos podrían ser capaces en virtud de un entrenamiento especial, que conlleve la reintegración de sus facultades mentales, pero, de todos modos, la doctrina de incapacidad ha sido adoptada por el Código Civil. (29 Enciclopedia Jurídica Española 84–86.)

asunto se pueda resolver en un juicio ordinario, o para que el expediente de dominio tenga que convertirse en un juicio contencioso o plenario, como ocurre en los casos de asientos registrales contradictorios (*Cf. Rodríguez* v. *Registrador*, 75 D.P.R. 712; *Bermúdez* v. *Registrador*, 74 D.P.R. 151; *Benítez* v. *Registrador*, 71 D.P.R. 563), o si la tramitación del expediente debe suspenderse hasta tanto pueda resolverse la impugnación en un juicio ordinario.

En 2 Roca Sastre 485, 496, 497, se aboga porque se suspendan los trámites del expediente de dominio hasta tanto se entable o se resuelva la acción plenaria declarativa correspondiente, en aquellos casos en que se plantean objeciones de tipo reivindicatorio. Esa solución podría tener eficacia bajo la legislación vigente en España. Pero preferimos mantener, y aplicar a este caso, la doctrina vigente en Puerto Rico, al efecto de que, en el caso de que surja en el expediente de dominio una controversia sobre la validez del título o de los derechos dominicales del peticionario, esa controversia debe dilucidarse en el propio expediente de dominio, perdiendo éste su naturaleza de *ex-parte* y convirtiéndose en un juicio contencioso. *Rodríguez* v. *Registrador*, supra; *Bermúdez* v. *Registrador*, supra; *Benítez* v. *Registrador*, supra.) Ello representa ser la práctica judicial más conveniente, ya que evita una duplicación en los procedimientos y mantiene la eficacia del expediente de dominio.

Actuó correctamente el tribunal a quo al admitir la oposición en este caso, y, por lo tanto, debe anularse el auto expedido. Pero debe advertirse que, al devolverse los autos al tribunal de instancia, continuará el expediente de dominio convertido en un juicio contencioso.

*Se anula el auto expedido.*