EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Efraín Torres Pérez y su esposa Mirka Ivelisse Cabrera Vélez<br><br>Peticionarios<br><br><br><br>Ex parte | Certiorari<br><br>2025 TSPR 5<br><br>215 DPR ___ |

Número del Caso:  CC-2024-0174

Fecha:  14 de enero de 2025

Tribunal de Apelaciones:

    Panel III

Representantes legales de la parte peticionaria:

    Lcdo. Carlos A. Vega Valentín

Representantes legales de la parte recurrida:

    Lcdo. Moisés Rodríguez Torres

Materia: Derecho Registral Inmobiliario - Cuándo procede exigir a la parte peticionaria en un procedimiento de expediente de dominio la presentación de evidencia de la aprobación de la segregación de la finca objeto del proceso por parte de la agencia gubernamental encargada de ello.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Efraín Torres Pérez y su esposa
Mirka Ivelisse Cabrera Vélez

  Peticionarios      CC-2024-0174    *Certiorari*

 *Ex parte*

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 14 de enero de 2025.

En el presente caso, estamos llamados a determinar si dentro de un procedimiento de expediente de dominio, -- regulado por el Artículo 185 de la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, infra* --, corresponde exigir a la parte peticionaria del mismo evidencia de la aprobación de la segregación de la finca objeto del proceso, por parte de la agencia gubernamental encargada de ello, cuando: (1) la finca de mayor cabida no consta inscrita en el Registro de la Propiedad Inmobiliaria, o (2) la finca de mayor cabida consta inscrita en el mencionado Registro, pero el

predio de terreno en cuestión se segregó antes del año 1944.

Adelantamos que, tras un ponderado y cuidadoso análisis del expediente ante nuestra consideración, así como de los estatutos y jurisprudencia aplicables, en aquellos casos en que la finca para la cual se solicita un expediente de dominio resulta ser una segregación de una finca de mayor cabida que no está inscrita, no es necesario presentar la aprobación de tal segregación por la agencia gubernamental encargada de ello.

Por otra parte, si la finca de mayor cabida consta inscrita, le corresponde al Tribunal de Primera Instancia evaluar la prueba presentada y determinar si el predio de terreno fue segregado previo al 4 de septiembre de 1944. De ser así, a quien peticiona el expediente de dominio, no le es de aplicación el requisito de la aprobación de la segregación por parte de la correspondiente agencia gubernamental ya que, previo a ese momento, no existía requisito en ley que así lo exigiera. Veamos.

I.

El 12 de mayo de 2023 el Sr. Efraín Torres Pérez y su esposa, la Sra. Mirka Ivelisse Cabrera Vélez, (en adelante, y en conjunto, "señor Torres Pérez") presentaron, ante el Tribunal de Primera Instancia, Sala Superior de Aguadilla, una *Petición* de expediente de dominio. En ésta, solicitaron al foro primario que declarara justificado el dominio a su favor sobre la finca de la siguiente descripción:

--Rústica: Predio de terreno localizado en el Barrio Galateo Bajo del término municipal de

Isabela, Puerto Rico, con una cabida superficial de MIL CIEN (1100.0) METROS CUADRADOS, equivalentes a CERO PUNTO DOS MIL SETECIENTOS NOVENTA Y NUEVE (0.2799) DIEZMIL[É]CIMAS DE CUERDA. EN LINDES: por el **NORTE**, con Julia Pérez; por el **SUR,** con Sucn. Vicente Torres; por el **ESTE**, con camino municipal y por el **OESTE**, con Ángel Torres y Sucn. Gilberto Torres. ----------------
-------------------------
--Contiene una estructura para propósitos residenciales. -------------------------------
-

De igual forma, y como parte de las alegaciones presentadas en su recurso, el señor Torres Pérez expresó que la propiedad estaba libre de cargas y gravámenes, que la misma tenía un valor de ciento veinticinco mil dólares ($125,000.00) y que carecía de título inscrito o título escrito que pudiese lograr acceso al Registro de la Propiedad. Además, indicó que la finca en cuestión formaba parte del catastro número 02-047-000-005-05-001.

En esa ocasión, el señor Torres Pérez también alegó que la referida finca fue adquirida en el año 2011 mediante un contrato privado de compraventa con la Sra. Virginia Pérez Aldarondo (en adelante, "señora Pérez Aldarondo"), esta última siendo la parte vendedora, quien adquirió el mencionado predio de terreno mediante contrato privado en el año 1951 del Sr. Vicente Torres Guzmán (en adelante, "señor Torres Guzmán") y su esposa, la Sra. Andrea Rodríguez (en adelante, "señora Rodríguez"). Ambos contratos de compraventa, según se señala en la *Petición* de expediente de dominio, se encontraban extraviados.

Por último, el señor Torres Pérez sostuvo que ha poseído la finca en cuestión de manera pública, pacífica, continua

y a título de dueño, -- junto con los propietarios anteriores --, por más de treinta (30) años; que el referido predio de terreno había mantenido las mismas dimensiones y configuración física de cuando fue adquirida; y que ésta no constaba inscrita en el Registro de la Propiedad. Sobre este extremo, también añadió que la finca en cuestión ha mantenido la misma cabida y configuración durante los términos dispuestos en los Artículos 1857 y 1859 del Código Civil de Puerto Rico de 1930, *infra,* ahora el Artículo 788 del Código Civil de 2020*, infra.*[1]

Así pues, y tras evaluar la *Petición* de expediente de dominio ante su consideración, el 16 de junio de 2023 el Tribunal de Primera Instancia emitió una *Orden.* En ésta, le solicitó al señor Torres Pérez determinada documentación para poder completar el expediente del caso, previo a la celebración del correspondiente juicio en su fondo. Además, el foro primario le ordenó que se realizara una serie de notificaciones personales, tanto por correo, como por edicto.

En cumplimiento con lo ordenado, el 9 de agosto de 2023 el señor Torres Pérez compareció ante el Tribunal de Primera Instancia mediante una *Moción en cumplimiento de Orden*. En particular, y a través del referido escrito, hizo entrega al foro primario de una *Certificación de valor* del Centro de Recaudación de Ingresos Municipales (en adelante, "CRIM") de la finca para la cual se solicitaba el expediente de dominio,

---

[1] Véase escolio 2.

una certificación de mensura del predio de terreno en cuestión y un proyecto de citación dirigido al Negociado de Telecomunicaciones.

Más adelante, el 20 de octubre de 2023, para ser específicos, el señor Torres Pérez presentó ante el Tribunal de Primera Instancia una *Moción para incluir prueba*. Con ésta, acompañó los siguientes documentos para que formaran parte del expediente que se levantaba en la causa de epígrafe: evidencia de notificación al Departamento de Justicia de Puerto Rico y al Fiscal de Distrito de Aguadilla; evidencia de notificación al Departamento de Obras Públicas de Puerto Rico; evidencia de notificación al Municipio de Isabela; evidencia de notificación a Luma Energy; evidencia de notificación a la Autoridad de Acueductos y Alcantarillados; evidencia de notificación al Negociado de Telecomunicaciones; evidencia de notificación de los colindantes; evidencia de notificación al anterior dueño; certificación de la publicación de edictos (Periódico Primera Hora); certificación negativa del Registro de la Propiedad, Sección Segunda de Aguadilla, y plano de mensura y su correspondiente certificación.

Así las cosas, el 27 de octubre de 2023 el foro primario celebró el juicio en su fondo de rigor. En éste, comparecieron el señor Torres Pérez, el Ministerio Público en representación del Pueblo de Puerto Rico y la representación legal del Municipio de Isabela. En la referida vista, se admitieron en evidencia la mayoría de los

documentos antes señalados, así como el testimonio de tres testigos, incluyendo el del señor Torres Pérez.

**Ahora bien, durante el transcurso del juicio en su fondo, el Tribunal de Primera Instancia mostró cierta preocupación en cuanto a que la finca para la cual se solicitaba el expediente de dominio no había sido segregada, proviniendo de una finca de mayor cabida.** En específico, y citando al Artículo 148 de la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, *infra*, indicó que la segregación debía realizarse mediante escritura pública con autorización de las agencias pertinentes y que esta evidencia no formaba parte del expediente. Por lo anterior, concedió al señor Torres Pérez, y a las demás partes con interés en este procedimiento, un breve término de tiempo para que expusieran por escrito su posición en torno a lo antes señalado.

En cumplimiento con lo ordenado, el 6 de noviembre de 2023 el señor Torres Pérez compareció ante el foro primario mediante *Moción en cumplimiento de orden*. En ésta, informó al Tribunal de Primera Instancia que adquirió el predio de terreno objeto del presente caso en el año 2011 de manos de la señora Pérez Aldarondo, quien a su vez adquirió la misma en el año 1951 mediante contrato privado de compraventa celebrado entre esta última, y el señor Torres Guzmán y la señora Rodríguez, el cual se extravió.

De otra parte, el señor Torres Pérez sostuvo que, a su mejor entender, y tal como se declaró en el juicio en su

fondo, la mencionada finca fue o formó parte en algún momento de cierta finca que aparece registrada en el CRIM a nombre del Sr. Rodolfo Montero Avilés (en adelante, "Montero Avilés"), dando la apariencia de que el predio de terreno para el cual se solicitó el expediente de dominio se configuró como una finca independiente allá para el año 1951.

Por último, el señor Torres Pérez señaló que, una investigación exhaustiva realizada por éste sobre los asuntos aquí bajo estudio, reveló que el señor Torres Guzmán había adquirido la finca objeto del presente caso allá para el año 1940 de parte del Sr. Rafael Cajigas, persona que también le vendió al señor Montero Avilés el remanente de la finca que aparece registrada en el CRIM a nombre de este último. Para acreditar lo anterior, acompañó su escrito con una declaración jurada suscrita por el Sr. Miguel Antonio Torres Pérez, -- vecino de la comunidad --, en la cual declaró que la finca objeto del presente caso se formó como una finca independiente para el 1940.

**A base de lo antes expresado, el señor Torres Pérez arguyó que, en nuestro ordenamiento jurídico, el requisito de aprobación de una segregación de un solar de una finca de mayor cabida, por la agencia gubernamental encargada de ello, comenzó a regir en nuestra jurisdicción a partir de septiembre del año 1944 y que la finca objeto de este procedimiento se formó antes del comienzo de dicha ley, razón por la cual no le es de aplicación la mencionada normativa.**

Por ello, solicitó que se declarara ha lugar el expediente de dominio.

Por su parte, y en oposición, el 7 de noviembre de 2023 el Municipio de Isabela compareció mediante *Moción objetando expediente de dominio*. En el referido escrito, éste se opuso a la *Petición* de expediente de dominio aquí bajo estudio por entender que había una posibilidad de que el predio de terreno objeto de la misma fuera producto de una división de un predio de mayor cabida para el cual no se solicitó la autorización de la Oficina de Gerencia de Permisos, según se requiere, ni se realizó la correspondiente segregación.

Evaluada la prueba testifical y documental presentada por las partes, el 22 de diciembre de 2023 el Tribunal de Primera Instancia dictó *Sentencia*. Al así hacerlo, declaró *No ha lugar* la *Petición* de expediente de dominio presentada por el señor Torres Pérez y desestimó la misma sin perjuicio. Lo anterior, por, a juicio del foro primario, no haberse presentado documentación alguna que acreditara que la finca objeto de la petición fuese segregada de una finca de mayor cabida.

En desacuerdo con el proceder del Tribunal de Primera Instancia, el 29 de enero de 2024 el señor Torres Pérez presentó un *Escrito de certiorari* ante el Tribunal de Apelaciones. En éste, planteó como error el que el foro primario declarara no ha lugar su petición de expediente de dominio cuando el predio de terreno objeto de dicho proceso se ha mantenido con la misma configuración física, dentro de

sus mismas colindancias y dimensiones por más de setenta y dos (72) años, y es proveniente de una finca matriz no inscrita, escenario donde no se requiere un permiso de segregación.

Enterado de lo anterior, el 12 de febrero de 2024 compareció el Municipio de Isabela mediante una *Oposición a certiorari*. En síntesis, éste expresó que, con pesar, se debía de oponer a la expedición del recurso apelativo presentado por el señor Torres Pérez por entender que el Tribunal de Primera Instancia actuó correctamente al negar el expediente de dominio al no existir una segregación autorizada por la agencia gubernamental encargada de ello, según se requiere en el Artículo 185 de la Ley Núm. 210 de 2015, *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, infra.*

Examinados los alegatos de ambas partes, el 26 de febrero de 2024 el Tribunal de Apelaciones emitió una *Resolución* mediante la cual denegó la expedición del *Escrito de certiorari*. En particular, el foro apelativo intermedio concluyó que no existían razones que justificaran intervenir con la determinación emitida por el foro primario.

Inconforme aún, el 27 de marzo de 2024 el señor Torres Pérez compareció ante nos mediante un *Escrito de certiorari*. En síntesis, éste nos solicita que revoquemos las determinaciones de los foros *a quo* y ordenemos la continuación de los procedimientos relacionados a la petición de expediente de dominio. Lo anterior procedería

sin la necesidad de presentar evidencia de la segregación de la finca para la cual aquí se solicitó un expediente de dominio.

Por su parte, el 8 de agosto de 2024 compareció el Municipio de Isabela mediante una *Oposición a certiorari*. En resumen, éste indica que nunca pudo identificar correctamente la propiedad objeto de la petición de expediente de dominio, para así determinar si el señor Torres Pérez tenía o no derecho sobre la misma. Además, sostiene que este último nunca solicitó a la Oficina de Gerencia y Permisos autorización para la segregación de la referida finca.

Trabada así la controversia, luego de haber expedido el presente recurso y con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa que gobierna los asuntos ante nuestra consideración.

II.

Como es sabido, la Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, mejor conocida como la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, 30 LPRA secs. 6001 *et seq.* (en adelante, "Ley del Registro de la Propiedad"), y su Reglamento, regulan todo lo concerniente a "la inscripción por la vía electrónica de los derechos, actos y contratos relativos a los bienes inmuebles". Art. 1 de la Ley Núm. 210-2015 (30 LPRA sec. 6001). En particular, el referido estatuto tiene como propósito actualizar nuestro "sistema de

publicidad de títulos que incluye las adquisiciones, modificaciones y extinciones del dominio y de los demás derechos reales que recaen sobre dichos bienes". *Íd.*

Establecido lo anterior, es importante resaltar que "en nuestra jurisdicción rige un sistema registral declarativo con eficacia confirmatoria". *DLJ Mortgage v. García Ramos*, 207 DPR 28, 43 (2021). Véase, L.R. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 3ra ed. rev., San Juan, Jurídica Editores, 2012, págs. 32-33. En particular, el sistema registral declarativo "se distingue por la voluntariedad de la inscripción de los documentos, así como el requisito de que estos se califiquen antes de acceder al Registro de la Propiedad". *DLJ Mortgage v. García Ramos*, *supra*, pág. 43. Véase, Rivera Rivera, *op. cit.*, pág. 33.

Así pues, al adoptar dicho sistema, en nuestra jurisdicción se incorporaron principios claves de derecho registral inmobiliario, incluyendo el principio del tracto sucesivo. *DLJ Mortgage v. García Ramos*, *supra*, pág. 43. En este último, se exige que "para [poder] inscribir documentos por los que se declaren, transmitan, graven, modifiquen, o extingan el dominio y demás derechos reales sobre bienes inmuebles, deberá constar previamente inscrito el derecho de la persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos". Art. 17 de la Ley Núm. 210-2015 (30 LPRA sec. 6032). Véase, *DLJ Mortgage v. García Ramos*, *supra*, pág. 43. Véanse, además, *Bechara Fagundo v.*

*Registradora*, 183 DPR 610, 619 (2011). De no cumplirse con este requisito medular, "se denegará la inscripción". *Íd*.

Y es que, dicho requisito busca que el transferente de hoy sea el adquirente de ayer y que el titular registral actual sea el transferente de mañana, teniendo como objetivo que el historial jurídico de cada finca inmatriculada, respecto de sus sucesivos titulares registrales, aparezca sin saltos ni lagunas. *DLJ Mortgage v. García Ramos*, *supra*, pág. 43-44. Véase, R.M. Roca Sastre y otros, *Derecho hipotecario*, Barcelona, Ed. Bosch, 2008, T. II, Vol. 1, pág. 429; Rivera Rivera, *op. cit.*, págs. 32-33. En otras palabras, este principio "tiene por objeto mantener el enlace o la conexión de las adquisiciones por el orden regular de los titulares registrales sucesivos, para formar una continuidad perfecta de todos los actos adquisitivos inscritos en orden al tiempo". *Rigores v. Registrador*, 165 DPR 710, 726-727 (2005).

Ahora bien, cuando lo que se busca es la inmatriculación de una finca que no consta inscrita, "[l]a primera inscripción de cada finca será de dominio". Art. 21 de la Ley Núm. 210-2015 (30 LPRA sec. 6036). En específico, debe de entenderse por inmatriculación como "el ingreso de una finca en el Registro de la Propiedad, acto que normalmente se efectúa mediante la primera inscripción de dominio a favor del inmatriculante". Rivera Rivera, *op. cit.*, pág. 338.

En esa dirección, y para aquellos casos en que el propietario carezca de título inscribible de dominio, el

Artículo 185 de la Ley del Registro de Propiedad, 30 LPRA sec. 6291, provee el mecanismo necesario para que, mediante el procedimiento de expediente de dominio, se declare justificado, o no, el respectivo dominio sobre los bienes. Rivera Rivera, *op. cit.*, pág. 338. Véase, *Toro v. Registrador*, 25 DPR 472, 476 (1917). En cuanto al expediente de dominio, se ha explicado que,

> en síntesis, si alguien carece de un título inscribible en el Registro puede acudir ante el Tribunal [de Primera Instancia] donde radica la finca y, previa citación de los anteriores dueños, del fiscal y de otros funcionarios, declarar que es el dueño de la finca en cuestión y lograr que el Tribunal ordene la inscripción en el Registro de su título dominical. M.J. Godreau & J.A. Giusti, *Las Concesiones De La Corona Y Propiedad De La Tierra En Puerto Rico, Siglos XVI-XX: Un Estudio Jurídico*, 62 Rev. Jur. UPR 351, 545-546 (1993).

Sobre este procedimiento, -- entiéndase, el de expediente de dominio --, en el pasado hemos señalado que, mientras no se suscite contienda entre partes conocidas y determinadas, el mismo no pierde su carácter de procedimiento *ex parte*. *Álvarez Rivera v. Registrador*, 84 DPR 229, 230 (1961); *Benítez v. Registrador*, 71 DPR 563, 568 (1950). Véase, *González v. El Pueblo*, 10 DPR 483 (1906). A *contrario sensu*, en caso de que una de las personas citadas se oponga a la acreditación del título propuesto por el solicitante y alegue que tiene un mejor derecho que el promovente, se entenderá convertido el procedimiento de expediente de dominio en un juicio contencioso ordinario. Art. 191 de la Ley Núm. 210-2015 (30 LPRA sec. 6297). Véase, *Ríos v.*

*Tribunal Superior*, 77 DPR 79, 83 (1954); *Rodríguez v. Registrador*, 75 DPR 712 (1953).

Dicho ello, y más allá de que se trate de un procedimiento *ex parte* o un juicio contencioso ordinario, hemos expresado que los requisitos legales contenidos en el Art. 185 de la Ley del Registro de la Propiedad, *supra*, para la tramitación de un expediente de dominio son esenciales y de cumplimiento estricto. *Nieves Osorio, Ex Parte*, 127 DPR 907 (1991); *Ex parte Rosario*, 75 DPR 698, 707 (1953); *Ex parte Perrier y Del Rosario,* 20 DPR 128 (1914). Esto surge "por el alto interés público que encierran". Rivera Rivera, *op. cit.*, pág. 338.

En ese sentido, y conforme a lo dispuesto en el Artículo 185 de la Ley del Registro de la Propiedad, *infra*, inciso (1), todo propietario que carezca de título inscribible de dominio, podrá inscribirlo si cumple con los siguientes requisitos:

> **1.** Presentar[] un escrito jurado en la sala del Tribunal de Primera Instancia correspondiente al lugar en que radiquen los bienes, o en la de aquél en que radique la porción de mayor cabida cuando se trate de una finca que radique en varias demarcaciones territoriales. Si se presenta el escrito ante una sala sin competencia, el tribunal de oficio, lo trasladará a la sala correspondiente. El escrito contendrá las siguientes alegaciones:
>
> > **a.** Nombre y circunstancias personales del promovente y de su cónyuge, si lo tuviera, al momento de adquirir la propiedad y al momento de hacer la solicitud, si hubiera alguna diferencia.

**b. La descripción exacta de la propiedad con sus colindancias y cabida de acuerdo a los títulos presentados.** De haberse practicado alguna mensura, deberá contener la cabida y colindancias que hayan resultado de la misma. Si la finca se formó por agrupación, deberán además, describirse individualmente las fincas que la integraron, **y si fue por segregación se describirá la finca principal de la cual se separó.**

**c.** Número de Catastro según aparece en el Centro de Recaudación de Ingresos Municipales.

**d. Expresión de que la finca, así como las fincas constituyentes en caso de tratarse de una agrupación, o la finca de la que proviene si se trata de una segregación, no constan inscritas en el Registro de la Propiedad.**

**e.** Una relación de las cargas que gravan la finca por sí o por su procedencia. En caso de no existir cargas, se expresará que está libre de cargas.

**f.** Una relación de los anteriores dueños conocidos con expresión de las circunstancias personales del inmediato anterior dueño.

**g.** El modo en que adquirió del inmediato anterior dueño.

**h.** El tiempo que el promovente y los dueños anteriores han poseído la propiedad de manera pública, pacífica, continua y a título de dueños.

**i.** El hecho de que la finca, o en caso de agrupación, las que la componen, mantuvieron la misma cabida y configuración durante

los términos que disponen los Artículos 1857 y 1859 del Código Civil de Puerto Rico para que operen los efectos de la prescripción adquisitiva.[2] **Si la finca resulta ser una segregación de una finca de mayor cabida que consta inscrita, la segregación tiene que haber sido aprobada por la agencia gubernamental correspondiente mediante plano de inscripción.** No constituirá justo título a los efectos de este Artículo, un título de dominio sobre una porción pro indivisa en una finca no segregada, ni el título que recae sobre una finca segregada de una finca inscrita en el registro.

**j.** El valor actual de la finca.

**k.** Las pruebas legales que se dispone presentar.

**l.** Las demás alegaciones que en derecho procedan en cada caso. (Énfasis nuestro). 30 LPRA sec. 6291.[3]

---

[2] Al presente, el Artículo 788 de la Ley Núm. 55-2020, mejor conocida como el Código Civil de Puerto Rico de 2020, *infra*, sustituyó los Artículos 1857 y 1859 del derogado Código Civil de 1930, 31 LPRA ant. secs. 5278 y 5280. En específico, el Artículo 788 establece lo siguiente sobre la usucapión de un bien inmueble:

La usucapión de un bien inmueble exige la posesión durante diez (10) años con justo título y buena fe, o durante veinte (20) años sin necesidad de título ni buena fe. 31 LPRA sec. 8032.

[3] A modo ilustrativo, como parte de la evaluación de la controversia ante nuestra consideración, entendemos pertinente considerar el Artículo 237 de la derogada Ley Núm. 198 de 8 de agosto de 1979, según enmendada, mejor conocida como la *Ley Hipotecaria y del Registro de la Propiedad*, *infra*, la cual establecía los requisitos para la presentación del expediente de dominio durante su vigencia. En específico, el inciso (9), parte Primera, del referido artículo es el antecesor del inciso (1)(i) del Artículo 185 del vigente estatuto bajo estudio.

En particular, el derogado inciso establecía lo siguiente:

(9) El hecho de que la finca o, en caso de agrupación, las que la componen, con sus alegadas dimensiones actuales, y ha mantenido

Nótese que dentro de los requisitos que contempla el Artículo 185 de la Ley del Registro de la Propiedad, *supra*, se encuentra el que, si la finca para la cual se peticiona el expediente de dominio resulta ser una segregación de una finca de mayor cabida que consta inscrita, la segregación tiene que haber sido aprobada por la agencia gubernamental correspondiente mediante plano de inscripción. *Íd*. **Por otro lado, si la finca de procedencia no está inscrita, en el inciso (1)(d) solo se requiere que así se haga constar en la solicitud de expediente de dominio.** *Íd*.

Por último, ya más en lo relacionado al alcance del procedimiento de expediente de dominio, debemos recordar que

---

la misma configuración durante los términos que disponen los artículos 1,857 y 1,859 del Código Civil para que operen los efectos de la prescripción adquisitiva o en su defecto, que la misma resulta ser una segregación de una finca de mayor cabida, cuya segregación fue debidamente aprobada por la Junta de Planificación de Puerto Rico o por la agencia gubernamental correspondiente. No constituirá justo título a los efectos de este artículo un título de dominio sobre una porción pro indivisa en una finca no segregada. 30 LPRA ant. sec. 2761.

Como se puede apreciar, en situaciones como las del caso de autos, el derogado estatuto contemplaba dos (2) opciones: (1) el hecho de que la finca, con sus alegadas dimensiones actuales, ha mantenido la misma configuración durante los términos necesarios para que operen los efectos de la prescripción adquisitiva o, en su defecto, o (2) que la misma resulta ser una segregación de una finca de mayor cabida, cuya segregación fue debidamente aprobada por la Junta de Planificación de Puerto Rico o por la agencia gubernamental correspondiente. Por tal razón, bajo el anterior estatuto, aquellos que solicitaban el expediente de dominio, y no cumplían con los términos para que operaran los efectos de la prescripción adquisitiva, tenían que realizar el procedimiento de segregación y obtener la aprobación de la agencia correspondiente.

Valga señalar que, en el estatuto hoy vigente, en su Artículo 185, inciso (1)(i), *infra*, el texto fue enmendado distinguiendo el requisito de que, "**[s]i la finca resulta ser una segregación de una finca de mayor cabida que consta inscrita, la segregación tiene que haber sido aprobada por la agencia gubernamental correspondiente mediante plano de inscripción**". (Énfasis nuestro). 30 LPRA sec. 6291. Ese no es el caso ante nuestra consideración.

"[l]a declaración de estar o no justificado el dominio no impedirá que se pueda presentar posteriormente una acción ordinaria contradictoria de dominio por quien se considere perjudicado, sin perjuicio de lo dispuesto en esta Ley respecto a tercero". Art. 192 de la Ley Núm. 210-2015 (30 LPRA sec. 6298). Lo anterior se debe a que el expediente de dominio se trata de un trámite judicial *ex parte* que no declara derechos, sino que justifica el dominio del promovente, por lo que no se podrá considerar como cosa juzgada. *Rodríguez v. Registrador*, *supra*, pág. 732; *Benítez v. Registrador, supra*, pág. 568. Véase, además, *González v. El Pueblo*, *supra*.

Habiendo examinado con detenimiento el marco legal y jurisprudencial que en nuestra jurisdicción gobierna el tema de las peticiones de expediente de dominio, por su importancia para la correcta y completa disposición de los asuntos ante nuestra consideración, conviene particularizar entonces en la figura de la segregación. Procedemos, pues, a ello.

III.

A.

Sabido es que la segregación es un acto de dominio mediante el cual el dueño de una finca decide separar parte de ella para formar una nueva. *Parras Silvestry v. Registradora*, 203 DPR 832, 838 (2020); *Colón Gutiérrez v. Registrador*, 114 DPR 850, 855 (1983); *Mattei v. Registrador*, 94 DPR 467 (1967). Sobre este proceso, nuestra Ley del

Registro de la Propiedad, en su Artículo 147, *infra*, establece que,

> [c]uando se segregue parte de una finca para formar una nueva, se inscribirá la porción segregada con número diferente. Se tomará razón de esta circunstancia al margen de la finca matriz, haciendo referencia a la cabida del predio que fue segregado y el número y datos registrales de la finca bajo el cual ha quedado inscrito. 30 LPRA sec. 6221. Véase, Rivera Rivera, *op. cit.*, pág. 372.

En esa dirección, y para lograr la inscripción de una segregación, el Artículo 148 de la Ley del Registro de la Propiedad, *infra*, por su parte, establece, en lo pertinente, los siguientes requisitos: (1) una resolución de autorización de la entidad gubernamental designada para ello; (2) un plano de inscripción aprobado por la entidad gubernamental correspondiente, y (3) una escritura pública en la que comparezcan todos los titulares y en la que se describa el remanente de la finca principal luego de las segregaciones, si alguno. 30 LPRA sec. 6222. Véase, *Parras Silvestry v. Registradora*, *supra*, pág. 838. Cumplidos estos requisitos, correspondería la inscripción de la segregación en el Registro de la Propiedad.

Ahora bien, lo antes descrito -- como bien señala el señor Torres Pérez -- no aplica a todos los posibles casos. Hay aquí un requisito de temporalidad envuelto. Nos explicamos.

B.

En atención a los argumentos levantados por el señor Torres Pérez, relacionados a que la segregación de la finca

para la cual se solicitó el expediente de dominio ocurrió antes del año 1944, -- por lo que no era necesario cumplir con los requisitos establecidos en el Artículo 148 de la Ley del Registro de la Propiedad, *supra --,* cabe señalar que la derogada Ley Núm. 213 de 12 de mayo de 1942, según enmendada, mejor conocida como la *Ley de Planificación, Urbanización y Zonificación de Puerto Rico*, 1944 Leyes de Puerto Rico 1107, (en adelante, "Ley de Planificación de 1942") era el estatuto que, para aquellos tiempos, y para realizar una segregación, requería la previa autorización de la agencia gubernamental designada para ello. En ese caso, siendo ésta la Junta de Planificación, Urbanización y Zonificación de Puerto Rico.

En particular, en su Artículo 24, *infra*, el referido estatuto establecía lo siguiente:

> A partir de la fecha de vigencia de los reglamentos aplicables para lotificaciones según se dispone en el artículo 10 en la presente, no se hará en Puerto Rico ninguna lotificación de terrenos y no se aceptará para registrarlo ningún plano de lotificación de terrenos, ni se levantará ningún edificio, ni se venderá o arrendará ningún terreno en áreas urbanas o para urbanizaciones, ni se expedirá ningún permiso, excepto cuando y hasta donde, se cumplan dichos reglamentos y hayan sido finalmente aprobados de acuerdo con los mismos por la Junta [de Planificación]. 1944 Leyes de Puerto Rico 1129. Véase, *Sepúlveda v. Registrador*, 64 DPR 449, 450-451 (1945).

Cónsono con lo anterior, el 29 de junio de 1944, el entonces Gobernador de Puerto Rico promulgó el Reglamento de Lotificación, el cual fue publicado en el periódico *La Democracia* el 4 de agosto del mismo año y empezó a regir el 4 de septiembre de 1944. *Matos v. Junta de Planificación, Urbanización y Zonificación de P.R.,* 66 DPR 439, 442 (1946);

*Sepúlveda v. Registrador*, *supra*, pág. 451. Véase, *Fernández v. Registrador*, 82 DPR 539, 544 (1961). **En cuanto a éste, basta con señalar que, en reiteradas ocasiones, este Tribunal ha sentenciado que "tal disposición no se aplica a lotificaciones consumadas con anterioridad al día 4 de septiembre de 1944, fecha en que entró en vigor dicho reglamento".** (Énfasis suplido). *Fernández v. Registrador*, *supra*, pág. 544. Véase, *Rodríguez v. Registrador*, 66 DPR 772 (1946); *Matos v. Junta de Planificación*, *supra*; *Rivera v. Registrador*, 64 DPR 461 (1945); *Sepúlveda v. Registrador*, *supra*.

Ahora bien, si después de dicha fecha, entiéndase 4 de septiembre de 1944, "el dueño de un solar en donde enclavan edificaciones segrega de la finca principal una de éstas y la vende, el hecho de que con anterioridad a la vigencia del Reglamento existieran las edificaciones, no lo hace inaplicable, y debe obtenerse la aprobación de la Junta". *Fernández v. Registrador*, *supra*, pág. 544. Véase, *Fortunet v. Registrador*, 67 DPR 265 (1947); *Rivera v. Registrador*, *supra*. En ese sentido, "aunque la segregación existiera de hecho antes del día 4 de septiembre de 1944, si se consuma después de dicha fecha, es necesaria la aprobación de la Junta de Planificación". *Fernández v. Registrador*, *supra*, págs. 544-545.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de la controversia ante nos.

IV.

En el presente caso, como mencionamos anteriormente, el señor Torres Pérez señala que el Tribunal de Apelaciones erró al denegar su *Petición de certiorari*, mediante la cual buscaba la revocación de la determinación del Tribunal de Primera Instancia que declaró no ha lugar cierta petición de expediente de dominio realizada por éste sobre una finca que ubica en el Barrio Galateo Bajo, del Municipio de Isabela. Esto fue por no haber presentado el permiso de segregación del predio de terreno para el cual se hace la petición. Le asiste la razón al señor Torres Pérez: el permiso de segregación de un predio de terreno no siempre es un requisito en los procedimientos de expediente de dominio.

Y es que, como bien señalamos previamente, en escenarios como éstos, el Artículo 185, inciso (1)(i), de la Ley del Registro de la Propiedad, *supra*, solo exige la presentación de un permiso de segregación por parte de la agencia gubernamental encargada de ello cuando la finca para la cual se peticiona un expediente de dominio resulta ser una segregación de una finca de mayor cabida que consta inscrita. En cuanto a fincas que provienen de otra finca de mayor cabida y esta última no consta inscrita en el Registro de la Propiedad, la referida disposición legal guarda total silencio.

Como cuestión de hecho, sobre lo anterior, el Artículo 185, en su inciso (1)(d), *supra*, se limita a señalar que en ese tipo de casos solo se requiere que, en la petición de

expediente de dominio, se haga constar la expresión de que la finca de procedencia no está inscrita. Nada se exige con relación al requisito de segregación.

Por lo anterior, y ante el silencio que guardó el legislador,[4] es forzoso concluir que, en aquellos casos en que la finca para la cual se solicita un expediente de dominio mediante el Artículo 185 de la Ley del Registro de la Propiedad, *supra*, resulta ser una segregación de una finca de mayor cabida que no está inscrita, no es necesario presentar ante el Tribunal de Primera Instancia la aprobación de tal segregación por parte de la agencia gubernamental encargada de ello. En estas situaciones no se debe considerar a la finca sobre la cual se reclama dominio como una segregación de un predio de mayor cabida, sino como una finca independiente de la cual se solicita un expediente de dominio.

De otro lado, si la finca de mayor cabida consta inscrita, el foro primario deberá evaluar la prueba presentada y determinar si la segregación fue realizada previo al 4 de septiembre de 1944. De ser ésta la conclusión, no le es de aplicación el requisito de la aprobación de la

---

[4] Debemos recordar que, ante el silencio producto de una inadvertencia legislativa, el tribunal viene llamado a atender o llenar ese vacío. J. Farinacci Fernós, *Hermenéutica Puertorriqueña: Cánones de Interpretación Jurídica*, San Juan, Editorial InterJuris, 2020, pág. 156. En esa dirección, el Artículo 6 del Código Civil de Puerto Rico de 2020 establece que: "El tribunal tiene el deber inexcusable de resolver diligentemente los asuntos ante su consideración, ateniéndose al sistema de fuentes del ordenamiento jurídico establecido. **El tribunal que rehúse fallar a pretexto de silencio, obscuridad, o insuficiencia de la ley**, o por cualquier otro motivo incurrirá en responsabilidad." (Énfasis suplido). 31 LPRA sec. 5316.

segregación por la agencia gubernamental ya que, en ese momento, no existía requisito en ley que así lo exigiera.

Siendo ello así, -- y toda vez que ese análisis no se realizó en la causa de epígrafe --, le corresponde, pues, al Tribunal de Primera Instancia, evaluar la prueba presentada y determinar si la finca de mayor cabida, a la que perteneció la finca sobre la cual se solicita el expediente de dominio, consta inscrita o no. De no estar inscrita, debe evaluar el expediente de dominio solicitado tomando en consideración únicamente la finca sobre la cual se reclama dominio y obviar cualquier referencia a la finca matriz. Esto se debe a que, en este tipo de caso, -- y según el Art. 185 (1)(d) de la Ley del Registro de la Propiedad, *supra* --, no es requisito la presentación de la aprobación de la segregación por la agencia gubernamental correspondiente, sino que basta la mención de la no inscripción de esa finca matriz.

De otra parte, de determinar que la finca de mayor cabida consta inscrita, el Tribunal de Primera Instancia deberá considerar, mediante la prueba que a esos efectos se le presente, si la segregación ocurrió previo al 4 de septiembre de 1944. De concluir en la afirmativa, no se le podría exigir a la parte que solicita el expediente de dominio la aprobación de la segregación de la agencia gubernamental.

Para finalizar, debemos recordar que el expediente de dominio no declara derechos, sino que justifica el dominio del promovente. Por lo tanto, nada impide que, en casos como

estos, se pueda presentar posteriormente una acción ordinaria contradictoria de dominio por quien se considere perjudicado.

V.

Por los fundamentos antes expuestos, se revoca la *Resolución* del Tribunal de Apelaciones, mediante la cual denegó la expedición del recurso de *certiorari* que le fuera presentado para revisar. En consecuencia, se devuelve el caso de autos al foro primario para la continuación de los procedimientos de forma compatible con lo aquí dispuesto.

Se dictará *Sentencia* de conformidad.

Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Efraín Torres Pérez y su esposa
Mirka Ivelisse Cabrera Vélez

    Peticionarios          CC-2024-0174     *Certiorari*

  *Ex parte*

SENTENCIA

En San Juan, Puerto Rico a 14 de enero de 2025.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la *Resolución* del Tribunal de Apelaciones, mediante la cual denegó la expedición del recurso de *certiorari* que le fuera presentado para revisar. En consecuencia, se devuelve el caso de autos al foro primario para la continuación de los procedimientos de forma compatible con lo aquí dispuesto.

    Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


              Javier O. Sepúlveda Rodríguez
              Secretario del Tribunal Supremo