ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| MAGALY REYES MARZÁN<br><br>**Parte Recurrida**<br><br>v.<br><br>LUISA HERNÁNDEZ OCASIO Y OTROS<br><br>**Parte Peticionaria** | TA2025CE00540 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil núm.:<br>**BY2024CV06477**<br><br>Sobre:<br>**Expediente de Dominio y Usucapión** |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de noviembre de 2025.

Comparecen ante nos los peticionarios, Luisa Hernández Ocasio, en adelante, Hernández Ocasio y la sucesión de su fenecido esposo, Julio Sánchez Hernández, solicitando que revisemos la *"Resolución"* del Tribunal de Primera Instancia, Sala Superior de Bayamón, del 12 de agosto de 2025. En la misma, el Foro Recurrido declaró *"No Ha Lugar"* las solicitudes de desestimación y sentencia sumaria que peticionaron ante el Foro Primario.

Por los fundamentos que expondremos a continuación, *denegamos* expedir el recurso solicitado.

## I.

Julio Sánchez Nieves, en adelante, causante, tuvo un hijo llamado Julio Sánchez Ortiz, producto de una relación anterior. Sin embargo, eventualmente volvió a contraer matrimonio, esta vez con Hernández Ocasio, y compraron una finca en el Municipio de Corozal. En ella, construyeron dos (2) propiedades. Producto de

dicha unión, nacieron Eduardo, Manuel, Ana Iris y Belén – todos de apellido Sánchez Hernández.

Ahora bien, surge que Manuel Sánchez Hernández se casó con la aquí recurrida, Magaly Reyes Marzán, en adelante, Reyes Marzán, en el año 1984. Al siguiente año, el causante autorizó a Manuel Sánchez Hernández a construir una casa en su finca, sita en el Municipio de Corozal. Relevante al caso de autos, se dieron dos (2) eventos importantes durante los años 2006 y 2008. El causante en el caso de epígrafe falleció intestado el 21 de julio de 2006. Además, dos (2) años más tarde, el 3 de septiembre de 2008, Manuel Sánchez Hernández y Reyes Marzán se divorciaron.

Siendo así, en el año 2013, la viuda del causante y los hijos que compartía con este, peticionaron al TPI-Bayamón la inscripción, mediante expediente de dominio, de la finca ubicada en el Municipio de Corozal. Estos últimos emplazaron mediante edicto. Así las cosas, el 19 de diciembre de 2014, el TPI-Bayamón emitió una *"Resolución"* declarando *"Ha Lugar"* la petición de la viuda y sus hijos, aquí peticionarios. De esta manera, se ordenó el registro de la finca en cuestión en el Registro de la Propiedad.

El 17 de septiembre de 2016, Luisa Hernández Ocasio, sus hijas Belén y Ana Iris Sáchez Hernández, así como el hijo de la primera relación del causante, Julio Sánchez Ortiz, le vendieron sus participaciones de la finca en cuestión a su hermano Eduardo Sánchez Hernández. Este último, demandó ante el TPI-Toa Alta a su hermano Manuel Sánchez Hernández, para liquidar la comunidad de bienes que, en virtud del causante, ahora se componía de ellos dos (2).[1]

Ahora bien, unos años más tarde, el 25 de octubre de 2024, la recurrida incoo una *"Demanda"* ante el TPI-Bayamón,

---

[1] Los hechos hasta aquí reseñados, mayormente relevantes al caso sobre expediente de dominio, surgen de las alegaciones y escritos de las partes.

impugnando la declaración del expediente de dominio sobre la finca en el Municipio de Corozal, y solicitando que se le declare titular del bien inmueble que está sito en él, alegando que reside allí hace más de cuarenta (40) años.[2] Eduardo Sánchez Hernández, la viuda del causante, y el resto de su sucesión contestaron la demanda durante los meses de diciembre del año 2024 y enero del año 2025.[3]

Paralelo a este asunto, se ventilaba ante el TPI-Toa Alta la demanda de Eduardo Sánchez Hernández contra su hermano, Manuel Sánchez Hernández para la división de la comunidad de bienes en la que se encontraban. Así, el 2 de enero de 2025, el TPI-Toa Alta emitió un dictamen en rebeldía, en la que autorizó a Eduardo Sánchez Hernández a comprar la participación de Manuel Sánchez Hernández. A consecución del referido dictamen, Reyes Marzán solicitó intervenir en el caso. Manuel Sánchez Hernández eventualmente se unió al petitorio de Reyes Marzán. Sin embargo, el 20 de febrero de 2025, el Foro Primario declaró *"No Ha Lugar"* la intervención y las mociones de los exesposos.

Ahora bien, y continuando con el caso de epígrafe, los demandados presentaron una *"Moción de Sentencia Sumaria"* el 25 de abril de 2025 y una *"Moción de Desestimación"* el 28 de abril de 2025.[4] La recurrida se opuso mediante moción el 4 de junio de 2025. Finalmente, el 8 de agosto de 2025, el TPI-Bayamón emitió una *"Resolución"*, en la que declaró *"No Ha Lugar"* las mociones dispositivas de las partes peticionarias.

Inconforme, el 25 de agosto de 2025, Eduardo Sánchez Hernández solicitó al TPI-Bayamón que reconsiderara.[5] Sin

---

[2] SUMAC, Entrada Núm. 1.
[3] SUMAC, Entradas Núm. 23 y 27.
[4] SUMAC, Entradas 40 y 42.
[5] SUMAC, Entrada Núm. 52.

embargo, el 4 de septiembre de 2025, el Foro Primario declaró *"No Ha Lugar"* la misma.[6]

Así las cosas, el 2 de octubre de 2025, las partes peticionarias recurrieron ante nos mediante un recurso de *"Certiorari"*, haciendo los siguientes señalamientos de error:

> **ERRÓ EL TRIBUNAL AL DECLARAR NO HA LUGAR LAS MOCIONES DISPOSITIVAS DE LOS DEMANDADOS.**
>
> **ERRÓ EL TRIBUNAL AL DICTAR SENTENCIA SUMARIA EN FAVOR DE LA PARTE RECURRIDA SOSLAYANDO PRUEBA ESENCIAL, MATERIAL Y ADMISIBLE EN EVIDENCIA.**

Mediante *"Resolución"* del 3 de octubre de 2025, concedimos a la parte recurrida hasta el 14 de octubre de 2025 para presentar su posición respecto al recurso, en conformidad con la Regla 37 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 56-57, 215 DPR ___ (2025).

Luego de una breve prórroga, el 25 de octubre de 2025, la recurrida presentó su *"Oposición al Certiorari"*. Por cuanto el recurso alcanzó su perfección, y contando así con los escritos de todas las partes, procedemos a expresarnos.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia,

---

[6] SUMAC, Entrada Núm. 55.

la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, *en casos de relaciones de familia*, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]
>
> (Énfasis suplido).

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. De Caguas v. JRO Construction*, 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR

83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
>> (A)    Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>>
>> (B)    Si la situación de hechos planteada es la más indicada para el análisis del problema.
>>
>> (C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>>
>> (D)    Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>>
>> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>>
>> (F)    Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>>
>> (G)    Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> Reglamento del Tribunal de Apelaciones, supra, pág. 59
> *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023)

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada

del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

### B. Desestimación

La Regla 10.2 de Procedimiento Civil, supra, permite que una parte demandada en un pleito solicite la desestimación de la demanda presentada en su contra. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025); *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213, 234 (2016). Esta, dispone que una parte demandada presentará una moción fundamentada en: (1) la falta de jurisdicción sobre la materia; (2) la falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio y; (6) dejar de acumular una parte indispensable. *Rodríguez Vázquez et als. v. Hosp. Auxilio Mutuo*, 2025 TSPR 55, 215 DPR ___ (2025); *Inmob. Baleares, et al. v. Benabe et al.*, 214 DPR 1109, 1128 (2024); *Rivera, Lozada v. Universal,* 214 DPR 1007, 1023 (2024); *Blassino,*

*Reyes v. Reyes Blassino*, 214 DPR 823, 833 (2024); *Costa Elena y otros v. Magic Sport y otros*, 213 DPR 523, 533 (2024).

Para que proceda una moción al amparo de la Regla 10.2, supra, el Foro Primario deberá tomar como ciertos todos los hechos alegados en la demanda y considerarlos de la manera más favorables a la parte demandante. *Díaz Vázquez et al. v. Colón Peña et al.*, 214 DPR 1135, 1149 (2024); *Inmob. Baleares, et al. v. Benabe et al.*, supra, pág. 1128; *Rivera, Lozada v. Universal*, supra, pág. 1023; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833; *Costas Elena y otros v. Magic Sport y otros*, supra, pág. 533; *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *Cobra Acquisition v. Mun. Yabucoa et. al.,* 210 DPR 384, 396 (2022); *Bonnelly Sagrado et al. v. United Surety*, 207 DPR 715, 722 (2021). Es decir, al momento de evaluar una moción de desestimación, los tribunales deberán examinar los hechos alegados en la demanda de forma conjunta y de la forma más liberal posible a favor de la parte demandante. *Morales et al. v. Asoc. Propietarios*, 214 DPR 284, 291 (2024); *Inmob. Baleares, et al. v. Benabe et al.*, supra, pág. 1128; *Cruz Pérez v. Roldán Rodríguez et. al.*, 206 DPR 261, 267 (2021); *López García v. López García*, 200 DPR 50, 69 (2018).

Bajo esta premisa, para que una moción de desestimación prospere, se tendrá que demostrar de forma certera que el demandante no tiene derecho a remedio alguno, que pudiere probar en apoyo a su reclamación. *Inmob. Baleares, et al. v. Benabe et al.*, supra, pág. 1128*; Cobra Acquisition v. Mun. Yabucoa et. al.,* supra, pág. 398*; López García v. López García*, supra, pág. 70. Esta Regla 10.2 (5), es de las de mayor complejidad en términos jurídicos, pues, una moción al amparo de esta se fundamenta en que los hechos que alega la parte demandante, aun presumiéndose ciertos, no son suficientes como base para que se les conceda un remedio. Es decir, en efecto, procederá la

desestimación si aun dando por cierto todos los hechos bien alegados del demandante, no se demuestra derecho a una reclamación. *Rivera, Lozada v. Universal,* supra, pág. 1023; *Blassino, Reyes v. Reyes Blassino,* supra, pág. 833; *Trinidad Hernández et al. v. E.L.A. et al.,* 188 DPR 828, 848 (2013).

### C. Expediente de Dominio

En nuestro ordenamiento jurídico gobierna un sistema registral declarativo con eficacia confirmatoria, principalmente distinguido por la voluntariedad de la inscripción de documentos en el Registro de la Propiedad para dichos fines, y por el requisito de su calificación previa a su acceso a dicho Registro. *Ex parte Torres, Cabrera,* 2025 TSPR 5, 215 DPR ___ (2025); *DLJ Mortgage Capital, Inc. v. García Ramos,* 207 DPR 28, 43 (2021). Véase, además, L.R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño,* 3ra ed. rev., San Juan, Jurídica Editores, 2012, págs. 32–33.

Así, la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* Ley Núm. 210 de 8 de diciembre de 2015, 30 LPRA sec. 6001 *et seq.,* en adelante Ley Núm. 210-2015, regula todo lo concerniente a la inscripción de los derechos, actos y contratos que recaen sobre bienes inmuebles. La finalidad de esta Ley es otorgarles publicidad a los títulos de adquisición, modificación o extinción del dominio, así como de otros derechos reales que recaigan sobre bienes inmuebles. Ley Núm. 210-2015, supra, sec. 6001; *Ex parte Torres, Cabrera,* supra. Tal publicidad se extiende única y exclusivamente, entre otras cosas, a la titularidad sobre dichos bienes. Ley Núm. 210-2015, supra, sec. 6002. A estos efectos, un título en particular puede inscribirse a solicitud de cualquier persona con interés en el mismo. Ley Núm. 210-2015, supra, sec. 6031.

Ahora bien, cuando se pretende inscribir una finca que no consta inscrita, la persona interesada deberá realizar su inmatriculación, que no es más que el ingreso de dicha finca en el Registro de la Propiedad. *Ex parte Román, Nieves*, 2025 TSPR 45, 215 DPR ___ (2025); *Ex parte Torres, Cabrera*, supra. Tal inmatriculación se logra mediante la primera inscripción, la cual necesariamente siempre será una de dominio a favor del inmatriculante. *Ex parte Román, Nieves*, supra; *Ex parte Torres, Cabrera*, supra. Véase, Ley Núm. 210-2015, supra, sec. 6036.

A estos efectos, la precitada Ley registral propone varios mecanismos para efectuar la inmatriculación de una finca, siendo uno de ellos la tramitación de un expediente de dominio. *Ex parte Román, Nieves*, supra. En específico, la Ley Núm. 210-2015 pone a disposición este mecanismo para que aquel propietario que carezca de un título inscribible de dominio logre la inmatriculación de una finca, siempre y cuando cumpla con los requisitos sustantivos y procesales allí dispuestos. Ley Núm. 210-2015, supra, sec. 6291; *Ex parte Román, Nieves*, supra; *Ex parte Torres, Cabrera*, supra.

Resulta imperativo señalar que el procedimiento de expediente de dominio está revestido de un alto interés público, por lo que los requisitos para su tramitación son esenciales y *de cumplimiento estricto*. *Ex parte Román, Nieves*, supra; *Ex parte Torres, Cabrera*, supra. *Nieves Osorio, Ex Parte*, 127 DPR 907, 909 (1991); *Ex Parte Rosario*, 75 DPR 698, 706-707 (1953). Después de todo, estos requisitos buscan, en parte, establecer garantías adecuadas en cuanto al hecho de que el promovente del expediente de dominio es realmente el dueño de la propiedad. *Bermúdez v. Registrador*, 74 DPR 151, 156-157 (1952).

**III.**

Las peticionarias recurren ante esta Curia, mediante el recurso de epígrafe, impugnando una resolución interlocutoria en

la que se declaró *"No Ha Lugar"* dos (2) mociones dispositivas. Sin embargo, determinamos *denegar el recurso de autos.*

Sabido es que una parte significativa del ejercicio revisor ejercido por este Foro al momento de considerar un recurso discrecional de esta naturaleza es evaluar la etapa en la que se encuentra. Además, debemos pasar juicio sobre cualquier actuación que contemple perjuicio, error o abuso discrecional.

Luego de un examen sosegado del expediente ante nos, concluimos que estamos impedidos de expedir el mismo. Lo cierto es que no hemos identificado perjuicio, parcialidad o abuso de discreción en la determinación del Foro Recurrido.

Según lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y los criterios evaluativos de la Regla 40 de nuestro Reglamento, *supra*, estamos impedidos de entrar en los méritos de la polémica ante nos, si no se demuestra fracaso irremediable de la justicia. Este Tribunal ha evaluado detenidamente el expediente y el tracto procesal del caso de epígrafe, y no encontramos razón en derecho que justifique nuestra intervención en esta etapa de los procedimientos.

## IV.

Por los fundamentos antes esbozados, *denegamos expedir el recurso solicitado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones