Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JUAN NÚÑEZ AQUINO Y OTROS<br><br>EX PARTE<br><br>**Peticionarios** | **TA2025AP00142** | ***APELACIÓN*** ***Acogido como Certiorari*** procedente del Tribunal de Primera Instancia Sala Superior de Carolina<br><br>Caso Número: CA2023CV02780<br><br>Sobre: Expediente de Dominio |

Panel integrado por su presidente, el juez Sánchez Ramos, la Jueza Romero García y el juez Pérez Ocasio.

Pérez Ocasio, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de septiembre de 2025.

Comparecen ante nos los peticionarios, Juan Núñez Aquino, en adelante, Núñez Aquino, y Ana Rolón Rodríguez, en adelante, Rolón Rodríguez, solicitando que revisemos la *"Resolución"* del Tribunal de Primera Instancia, Sala Superior de Carolina, en adelante, TPI-Carolina, notificada el 25 de junio de 2025. Mediante el referido dictamen, el Foro Recurrido declaró *"No Ha Lugar"* la petición de expediente de dominio presentada por los peticionarios, y decretó el cierre y archivo sin perjuicio de la solicitud.

Por los fundamentos que expondremos a continuación, *expedimos* el recurso solicitado y *revocamos* la *"Resolución"* recurrida.

**I.**

El 2 de septiembre de 2023, los peticionarios presentaron una "*Petición*" sobre Expediente de Dominio ante el TPI-Carolina. En la misma, solicitaron que se declarara a su favor el dominio sobre una finca cuya descripción consignaron como sigue:

**RUSTICA**: Predio de terreno de forma irregular, compuesto de cero punto nueve mil novecientos ochenta y tres cuerdas (.9983 cuerdas). Equivalentes a tres mil novecientos veintitrés punto ocho mil quinientos cuarenta y cinco metros cuadrados (3923.8545 m.c.). Radicado en la Carretera PR 858 km 4.0, Interior, Barrio Cacao, Carolina, Puerto Rico, en lindes por el NORTE, en una distancia de cincuenta metros y nueve mil trescientos quince milésimas de otro (50.9315 mts) en colindancia con José González Núñez; por el SUR, en varias alineaciones que suman una distancia de treinta y cinco metros y trescientos veintinueve milésimas de otro (35.0329 mts) en colindancia con la Calle Municipal; por el ESTE, en una distancia de varias alineaciones que suman noventa y dos metros y tres mil doscientos sesenta y seis milésimas de otro (92.3266 mts.) en colindancia con Natividad Aquino Díaz; por el OESTE, en una distancia de varias alineaciones que suman noventa y ocho metros y mil catorce milésimas de otro (98.1014 mts) en colindancias con Consuelo Núñez Aquino, Jesús Núñez del Valle y José Galarza Núñez.[1]

Presentada la solicitud, el 13 de septiembre de 2023, el TPI-Carolina expidió las citaciones dirigidas a los vecinos colindantes de la finca objeto de la petición, así como al Municipio de Carolina, al Fiscal de Distrito de Carolina, y a otras entidades gubernamentales y administrativas.[2] Asimismo, el 28 de septiembre de 2023, el Foro Recurrido expidió el emplazamiento por edicto dirigido a las personas ignoradas o desconocidas a quienes podía perjudicar la inscripción solicitada y a los que tuvieran cualquier derecho real sobre el bien objeto de la petición.[3] Tal edicto fue publicado en un periódico de circulación general diaria los días 3, 10 y 17 de octubre de 2023.[4] De igual manera, los peticionarios acreditaron el diligenciamiento personal de las citaciones dirigidas a los vecinos colindantes, mediante moción fechada el 20 de octubre de 2023.[5]

---

[1] SUMAC, Entrada Núm. 1.
[2] SUMAC, Entradas Núm. 6 y 7.
[3] SUMAC, Entrada Núm. 10.
[4] SUMAC, Entrada Núm. 43, Anejo Núm. 12.
[5] SUMAC, Entrada Núm. 22.

Así las cosas, el 6 de noviembre de 2023, el Ministerio Público presentó su posición en cuanto al procedimiento mediante una "*Moción Exponiendo Dictamen Fiscal*", el cual emitió de manera *favorable*.[6] Por su parte, el 22 de diciembre de 2023, el Municipio de Carolina compareció mediante "*Moción Excluyente*".[7] En la misma, informó que carecía de competencia sobre la finca objeto del expediente de dominio, ya que esta no ubicaba dentro de su demarcación territorial, sino que pertenecía al Municipio de Trujillo Alto.

En consecuencia, el 26 de diciembre de 2023, el TPI-Carolina notificó una Orden mediante la cual excluyó al Municipio de Carolina, y concedió a los peticionarios un término de cinco (5) días para presentar un proyecto de citación dirigido al Municipio de Trujillo Alto.[8] En virtud de esto, el 26 de diciembre de 2023, los peticionarios presentaron el correspondiente proyecto de citación,[9] el cual fue expedido al día siguiente por el Foro Recurrido.[10]

El 25 de marzo de 2024, el Municipio de Trujillo Alto presentó su posición mediante una "*Comparecencia Especial y en Solicitud de Exclusión de Futuras Comparecencias y Notificaciones*".[11] A tenor con esto, el TPI-Carolina emitió una Orden en la que excluyó al Municipio de Trujillo Alto de comparecer y ser notificado de los procedimientos en el caso de marras, toda vez que *no presentó oposición al mismo*.[12]

Posteriormente, el 12 de diciembre de 2024, el Foro Primario notificó una Orden a través de la cual señaló la celebración del juicio en su fondo mediante videoconferencia para el 7 de mayo de 2025.[13]

---

[6] SUMAC, Entrada Núm. 18.
[7] SUMAC, Entrada Núm. 26.
[8] SUMAC, Entrada Núm. 27.
[9] SUMAC, Entrada Núm. 29.
[10] SUMAC, Entrada Núm. 31.
[11] SUMAC, Entrada Núm. 35.
[12] SUMAC, Entrada Núm. 36.
[13] SUMAC, Entrada Núm. 39.

Así las cosas, los peticionarios presentaron dos (2) mociones consecutivas, fechadas el 5 de mayo de 2025 y el 6 de mayo de 2025, a través de las cuales sometieron toda la evidencia que pretendían utilizar en juicio.[14] No obstante, el TPI-Carolina solicitó una serie de documentos adicionales mediante una Orden fechada el 7 de mayo de 2025.[15]

El mismo día, los peticionarios solicitaron el reseñalamiento del juicio en su fondo, de manera que pudieran diligenciar la citación requerida al Departamento de Transportación y Obras Públicas,[16] quien fue debidamente citado el 14 de mayo de 2025 mediante correo certificado.[17] En esta fecha, además, se celebró una vista mediante la cual el Foro Primario transfirió el juicio en su fondo para el 24 de junio de 2025, y manifestó, entre otras cosas, la necesidad de que los peticionarios hicieran una relación de los dueños anteriores, así como el modo en que adquirió el predio.[18]

En cumplimiento con lo ordenado, el 23 de mayo de 2025, los peticionarios sometieron una declaración jurada de Núñez-Aquino mediante una "*Moción Informativa*".[19] En esta, el peticionario consignó la forma y la fecha en que adquirió la propiedad del alegado dueño anterior, así como el hecho de haberla poseído de forma continua, pública, pacífica y a título de dueño.

Finalmente, el juicio en su fondo fue celebrado el 24 de junio de 2025.[20] A este comparecieron los peticionarios, el Ministerio Público, Roberto J. Santiago Dueño, el agrimensor que practicó la mensura de la finca, y Enrique Llanos González, vecino de los peticionarios. A estos efectos, el 25 de junio de 2025, el TPI-Carolina

---

[14] SUMAC, Entradas Núm. 43 y 44.
[15] SUMAC, Entrada Núm. 45.
[16] SUMAC, Entrada Núm. 46.
[17] SUMAC, Entrada Núm. 49.
[18] SUMAC, Entrada Núm. 48.
[19] SUMAC, Entrada Núm. 50.
[20] SUMAC, Entrada Núm. 54.

notificó su "*Resolución*".[21] Mediante la misma, declaró "*No Ha Lugar*" la petición de expediente de dominio y, en consecuencia, decretó su cierre y archivo sin perjuicio. Inconforme con este resultado, los peticionarios presentaron oportunamente una moción de reconsideración,[22] la cual fue declarada "*No Ha Lugar*" mediante una Orden notificada el 30 de junio de 2025.[23]

Aún inconformes con el proceder del Foro Primario, el 17 de julio de 2025, los peticionarios recurren ante esta Curia mediante un recurso de apelación, haciendo los siguientes señalamientos de error:

**UNO:** Erró el Tribunal de Primera Instancia al denegar la solicitud de expediente de dominio sin permitir la subsanación de elementos que, conforme a la normativa jurisprudencial y doctrinal vigente, son de naturaleza técnica y corregibles dentro del curso ordinario del procedimiento de jurisdicción voluntaria.

**DOS:** Erró el Tribunal de Primera Instancia al desestimar prueba creíble, consistente y no controvertida, presentada mediante testimonios juramentados y documentos oficiales, sin expresar fundamentos válidos o jurídicamente aceptables que justifiquen restarle valor probatorio, contrario a lo establecido en precedentes aplicables.

**TRES:** Erró el Tribunal al evaluar con rigurosidad improcedente el testimonio sobre la posesión y adquisición, aplicando criterios propios de un proceso contencioso adversativo, ignorando así el carácter flexible, no contencioso y de jurisdicción voluntaria del procedimiento de expediente de dominio bajo la Ley Núm. 210-2015 y la jurisprudencia interpretativa del Tribunal Supremo.

**CUATRO:** Erró el Tribunal de Primera Instancia al exigir precisión absoluta sobre la fecha inicial de la posesión, cuando la prueba presentada —incluyendo el testimonio juramentado del promovente y del testigo Enrique Llanos, de 69 años— corroboró de forma clara y no impugnada que los promoventes han poseído la finca en concepto de dueños por más de cinco (5) décadas. Aun si existiera ambigüedad sobre

---

[21] SUMAC, Entrada Núm. 52.
[22] SUMAC, Entrada Núm. 53.
[23] SUMAC, Entrada Núm. 55.

el año exacto de inicio, dicha circunstancia no impide justificar el dominio conforme al Artículo 185 de la Ley Núm. 210-2015, máxime cuando se ha demostrado que la finca ha sido su residencia principal por décadas y tal información fue ratificada incluso por el Municipio de Trujillo Alto. El Tribunal Supremo ha sostenido que la falta de fecha exacta no es óbice cuando la prueba demuestra posesión prolongada conforme a derecho.

Posteriormente, los peticionarios presentaron ante nos una "*Moción Acompañando Transcripción de Vista*". A tenor con lo anterior, este Foro acogió el recurso como una petición de *certiorari*, manteniendo el código alfanúmerico asignado por la Secretaria de este Tribunal, y emitió una "*Resolución*" el 14 de agosto de 2025, donde concedió a los peticionarios un término de tres (3) días para acreditar la notificación del recurso al Procurador General. Además, concedió a este último un término de diez (10) días para presentar sus objeciones en cuanto a la transcripción de la prueba oral, luego de lo cual tendría otro término de diez (10) días adicionales para presentar su posición en cuanto a los méritos del recurso. El 15 de agosto de 2025, los peticionarios presentaron una "*Moción Informativa en Cumplimiento de Orden*". Vencido el término concedido al Procurador General sin que presentara su posición en cuanto al recurso de epígrafe, procedemos a expresarnos.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes

interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Sin embargo, a tenor con la Regla 52.2(b) de Procedimiento Civil, supra, y la Regla 32(B) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 47, 215 DPR ___ (2025), el *certiorari* es el vehículo procesal adecuado para que el Tribunal de Apelaciones pueda revisar las resoluciones finales dictadas por los tribunales de instancia en procedimientos de *jurisdicción voluntaria*, siempre que se presente el recurso dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de copia de la notificación de la resolución recurrida.

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas.*

*Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR ___ (2025). La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres González v. Zaragoza Meléndez,* supra, pág. 848; *McNeil Healthcare v. Mun. Las Piedras I,* 206 DPR 391, 404 (2021); *IG Builders et al. v. BBVA PR,* 185 DPR 307, 338-339 (2012); *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.,* supra; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez,* supra, pág. 849. La precitada Regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> *In re Aprob. Enmdas. Reglamento TA,* supra; *BPPR v. Gómez-López,* 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista

exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Pueblo v. Custodio Colón*, 192 DPR 567, 589 (2015); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

### B. Expediente de Dominio

En nuestro ordenamiento jurídico gobierna un sistema registral declarativo con eficacia confirmatoria, principalmente distinguido por la voluntariedad de la inscripción de documentos en el Registro de la Propiedad para dichos fines, y por el requisito de su calificación previa a su acceso a dicho Registro. *Ex parte Torres, Cabrera*, 2025 TSPR 5, 215 DPR ___ (2025); *DLJ Mortgage Capital, Inc. v. García Ramos*, 207 DPR 28, 43 (2021). Véase, además, L.R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra ed. rev., San Juan, Jurídica Editores, 2012, págs. 32–33.

Así, la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, Ley Núm. 210 de 8 de diciembre de 2015, 30 LPRA sec. 6001 *et seq.*, en adelante Ley Núm. 210-2015, regula todo lo concerniente a la inscripción de los derechos, actos y contratos que recaen sobre bienes inmuebles. La finalidad de esta Ley es otorgarles publicidad a los títulos de adquisición, modificación o extinción del dominio, así como de otros derechos reales que recaigan sobre bienes inmuebles. Ley Núm. 210-2015, supra, sec. 6001; *Ex parte Torres, Cabrera*, supra. Tal publicidad se extiende única y exclusivamente, entre otras cosas, a la titularidad sobre dichos bienes. Ley Núm. 210-2015, supra, sec. 6002. A estos efectos, un título en particular puede inscribirse a solicitud de cualquier persona con interés en el mismo. Ley Núm. 210-2015, supra, sec. 6031.

Ahora bien, cuando se pretende inscribir una finca que no consta inscrita, la persona interesada deberá realizar su inmatriculación, que no es más que el ingreso de dicha finca en el Registro de la Propiedad. *Ex parte Román, Nieves*, 2025 TSPR 45, 215 DPR ___ (2025); *Ex parte Torres, Cabrera*, supra. Tal inmatriculación se logra mediante la primera inscripción, la cual necesariamente siempre será una de dominio a favor del inmatriculante. *Ex parte Román, Nieves*, supra; *Ex parte Torres, Cabrera*, supra. Véase, Ley Núm. 210-2015, supra, sec. 6036.

A estos efectos, la precitada Ley registral propone varios mecanismos para efectuar la inmatriculación de una finca, siendo uno de ellos la tramitación de un expediente de dominio. *Ex parte Román, Nieves*, supra. En específico, la Ley Núm. 210-2015 pone a disposición este mecanismo para que aquel propietario que carezca de un título inscribible de dominio logre la inmatriculación de una finca, siempre y cuando cumpla con los requisitos sustantivos y

procesales allí dispuestos. Ley Núm. 210-2015, supra, sec. 6291; *Ex parte Román, Nieves*, supra; *Ex parte Torres, Cabrera*, supra.

Para iniciar este procedimiento, el Artículo 185 de la Ley Núm. 210-2015, supra, sec. 6291, expresamente dispone que el promovente deberá presentar un escrito jurado en la sala del Tribunal de Primera Instancia correspondiente al lugar donde radique el bien inmueble, o donde radique la porción de mayor cabida en los casos que traten sobre una finca que radique en varias demarcaciones territoriales. Sin embargo, *si el promovente presenta el escrito en una sala sin competencia, el tribunal motu proprio lo trasladará a la sala correspondiente. Id.*; *Ex parte Torres, Cabrera*, supra. Después de todo, la facultad de un tribunal determinado sobre el expediente de dominio no es exclusiva, por lo que su radicación en una sala sin competencia no convierte en nula la resolución aprobatoria que en su día recaiga. *Rodríguez v. Registrador*, 75 DPR 712, 729 (1953).

En cuanto a su contenido sustantivo, la precitada Ley dispone que el escrito deberá contener las siguientes alegaciones:

    a. Nombre y circunstancias personales del promovente y de su cónyuge, si lo tuviera, al momento de adquirir la propiedad y al momento de hacer la solicitud, si hubiera alguna diferencia.

    b. La descripción exacta de la propiedad con sus colindancias y cabida de acuerdo a los títulos presentados. *De haberse practicado alguna mensura, deberá contener la cabida y colindancias que hayan resultado de la misma.* […].

    c. Número de Catastro según aparece en el Centro de Recaudación de Ingresos Municipales.

    d. Expresión de que la finca, así como las fincas constituyentes en caso de tratarse de una agrupación, o la finca de la que proviene si se trata de una segregación, no constan inscritas en el Registro de la Propiedad.

    e. Una relación de las cargas que gravan la finca por sí o por su procedencia. En caso de no existir cargas, se expresará que está libre de cargas.

f. Una relación de los anteriores dueños conocidos con expresión de las circunstancias personales del inmediato anterior dueño.

g. *El modo en que adquirió del inmediato anterior dueño.*

h. *El tiempo que el promovente y los dueños anteriores han poseído la propiedad de manera pública, pacífica, continua y a título de dueños.*

i. El hecho de que la finca, o en caso de agrupación, las que la componen, mantuvieron la misma cabida y configuración durante los términos que disponen los Artículos 1857 y 1859 del Código Civil de Puerto Rico[24] para que operen los efectos de la prescripción adquisitiva. Si la finca resulta ser una segregación de una finca de mayor cabida que consta inscrita, la segregación tiene que haber sido aprobada por la agencia gubernamental correspondiente mediante plano de inscripción. No constituirá justo título a los efectos de este Artículo, un título de dominio sobre una porción pro indivisa en una finca no segregada, ni el título que recae sobre una finca segregada de una finca inscrita en el registro

j. El valor actual de la finca.

k. Las pruebas legales que se dispone presentar.

l. Las demás alegaciones que en derecho procedan en cada caso

Ley Núm. 210-2015, supra, sec. 6291(1); *Ex parte Román, Nieves*, supra; *Ex parte Torres, Cabrera*, supra.

Resulta imperativo señalar que el procedimiento de expediente de dominio está revestido de un alto interés público, por lo que los requisitos para su tramitación son esenciales y *de cumplimiento estricto. Ex parte Román, Nieves*, supra; *Ex parte Torres, Cabrera*, supra. *Nieves Osorio, Ex Parte*, 127 DPR 907, 909 (1991); *Ex Parte Rosario*, 75 DPR 698, 706-707 (1953). Después de todo, estos requisitos buscan, en parte, establecer garantías adecuadas en cuanto al hecho de que el promovente del expediente de dominio es realmente el dueño de la propiedad. *Bermúdez v. Registrador*, 74 DPR 151, 156-157 (1952).

---

[24] El 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico, Ley Núm. 55-2020. Sin embargo, la Ley Núm. 210-2015 no ha sido enmendada para atemperar su texto a los fines de reemplazar estos Artículos, los cuales hallan su equivalencia en el Artículo 788, 31 LPRA sec. 8032, del nuevo Código Civil.

A modo de ejemplo, nuestro más Alto Foro interpretó que la descripción de una propiedad en una mensura no tiene que "ser exacta tal como en la petición del expediente de dominio en que se haya presentado un título (que no consta inscrito)". *Ex parte Román, Nieves*, supra. Después de todo, la Ley Núm. 210-2015 solo requiere que el promovente alegue y presente prueba de alguna mensura que haga constar la cabida o medida superficial en el sistema métrico decimal de la finca que se pretende inmatricular. *Ex parte Román, Nieves*, supra.

*A contrario sensu*, nuestro Tribunal Supremo ha determinado como razones para una posible desestimación de un expediente de dominio el incumplimiento de consignar la cabida o medida superficial de la finca en el sistema métrico decimal, la existencia de un asiento contradictorio en el Registro de la Propiedad a favor de un titular que no ha consentido a la cancelación ni ha sido vencido en juicio, o la falta de citación adecuada de los anteriores dueños o sus causahabientes. *Ex parte Román, Nieves*, supra; *Sánchez González v. Registrador*, 106 DPR 361, 368-369 (1977); *Ex Parte Rosario*, supra, pág. 712; *Bermúdez v. Registrador*, supra, pág. 154; *Benítez v. Registrador*, 71 DPR 563, 567 (1950).

Finalmente, debemos resaltar que, como regla general, el expediente de dominio es un procedimiento de jurisdicción voluntaria o *ex parte*, presuntivamente rápido, cuyo único fin es que un tribunal declare justificado, o no, el dominio de la finca que pretende inscribirse a favor del promovente de la acción. *Ex parte Román, Nieves*, supra; *Ex parte Torres, Cabrera*, supra; *Ex Parte Rosario*, supra, pág. 707. La jurisprudencia ha sido clara al establecer que tal naturaleza *solamente se pierde si surge dentro del procedimiento alguna oposición entre partes citadas*, conocidas y determinadas, en cuanto a la acreditación del título de dominio propuesto, momento en que podría convertirse en un juicio

ordinario y contencioso. *Ex parte Román, Nieves*, supra; *Ex parte Torres, Cabrera, supra*; *Rodríguez v. Registrador*, supra, págs. 729-730; *Benítez v. Registrador*, supra, pág. 568.

Por lo tanto, el expediente de dominio no se encuentra disponible para declarar otros derechos sobre la finca ni para destruir definitivamente los derechos de los interesados, toda vez que este procedimiento no es equivalente a una declaración de usucapión. *Ex parte Román, Nieves, supra; Ex parte Torres, Cabrera, supra*; *Rodríguez v. Registrador*, supra, pág. 732. Véase Ley Núm. 210-2015, supra, sec. 6297. Después de todo, el efecto exclusivo del expediente de dominio siempre ha sido habilitar y justificar un título de dominio para quien no lo tiene. *Rodríguez v. Registrador*, supra. Así, la resolución que recaiga en su momento nunca adquiere carácter de cosa juzgada, de manera que nada impide que posteriormente se celebre un juicio declarativo a instancia de parte interesada que se considere perjudicada. *Ex parte Román, Nieves, supra; Ex parte Torres, Cabrera, supra*; *Rodríguez v. Registrador*, supra, pág. 732.

### C. El Cumplimiento de Normas Procesales

Las partes tienen la obligación de ejecutar los procedimientos prescritos en ley para obtener una determinación de un órgano judicial, pues, como regla general, las reglas procesales no son renunciables. *Rosario Domínguez et als. v. ELA et al.*, 198 DPR 197, 207 (2017), citando a R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, Ed. LexisNexis, 2010, Sec. 308, pág. 24. De esta manera, nuestro ordenamiento procesal preceptúa el que se realicen determinados actos en los términos dispuestos para ello. *Rosario Domínguez et als. v. ELA et al.*, supra. Estos términos pueden ser discrecionales, directivos, de cumplimiento estricto o jurisdiccionales, y su incumplimiento acarrea distintas

consecuencias. *Rivera Marcucci et al. v. Suiza Dairy*, 196 DPR 157, 169 (2016).

En lo pertinente, cuando una ley establece requisitos de naturaleza jurisdiccional, su ejecución debe efectuarse previo a que el tribunal pueda considerar los méritos de una controversia. *Rosario Domínguez et als. v. ELA et al.*, supra, pág. 208; *Rivera Marcucci et al. v. Suiza Dairy*, supra; *COSVI v. CRIM*, 193 DPR 281, 287 (2015); *Shell v. Srio. Hacienda*, 187 DPR 109, 123 (2015). Esto pues, siendo de naturaleza improrrogable e insubsanable, su incumplimiento priva al foro judicial de la autoridad para entender sobre el asunto que se trae a su consideración. *Rosario Domínguez et als. v. ELA et al.*, supra, págs. 208-209; *COSVI v. CRIM*, supra; *Shell v. Srio. Hacienda*, supra. Por tal razón, debe surgir claramente del texto de la ley la intención legislativa de imponerle tal naturaleza a los plazos o requisitos procesales. *Bernier González v. Rodríguez Becerra*, 200 DPR 637, 657 (2018); *Rosario Domínguez et als. v. ELA et al.*, supra, pág. 209; *Shell v. Srio. Hacienda*, supra, pág. 124.

Por su parte, cuando se trata de *requisitos de cumplimiento estricto*, un tribunal tiene facultad para aplazar su acatamiento, pues estos son de naturaleza prorrogable. *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 6, 214, DPR ___ (2024); *Rosario Domínguez et als. v. ELA et al.*, supra pág. 210; *Rivera Marcucci et al. v. Suiza Dairy*, supra, págs. 169-170. Es decir, a diferencia de los requisitos jurisdiccionales, su inobservancia tardía no hace mandatorio la desestimación automática, pudiendo los foros judiciales proveer justicia según los hechos particulares del caso. *Bernier González v. Rodríguez Becerra*, supra, pág. 258; *García Ramis v. Serrallés*, 171 DPR 250, 253 (2007); *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 881 (2007); *Arriaga v. F.S.E*, 145 DPR 122, 131 (1998).

Sin embargo, esto no significa que su aplazamiento opere de forma automática, sino que las partes deben demostrar que la desviación en su cumplimiento se debió a justa causa. *Rosario Domínguez et als. v. ELA et al.*, supra; *Rivera Marcucci et al. v. Suiza Dairy*, supra, pág. 171. Así, quien actúa fuera de estos preceptos procesales debe demostrar que en efecto hubo justa causa para el incumplimiento, y detallar las bases razonables para acreditar la justa causa. *Freire Ruiz et al. v. Morales, Hernández,* supra; *Bernier Gonzalez v. Rodríguez Becerra,* supra, pág. 658; *Rosario Domínguez et als. v. ELA et al.*, supra, pág. 210; *Rivera Marcucci et al. v. Suiza Dairy*, supra.

Es imperativo recordar que la justa causa es un asunto que debe evaluarse caso a caso, por lo que los tribunales tienen el deber de analizar cuidadosamente las explicaciones que demuestran el incumplimiento, así como la evidencia que los sustenta. *Rivera Marcucci et al. v. Suiza Dairy*, supra, pág. 172. Nuestro Tribunal Supremo enfáticamente estableció que estas directrices *no pueden ser aplicadas de forma inflexible*, pues, aunque la parte en incumplimiento debe satisfacer la existencia de justa causa, los tribunales deben conceder una oportunidad razonable para demostrar o evidenciar la misma previo a decretar la severa sanción de desestimación de su reclamo. *Rojas v. Axtmayer Ent., Inc.*, 150 DPR 560, 565 (2000).

### D. Apreciación de la Prueba Oral

La Regla 42.2 de Procedimiento Civil, supra, dispone en cuanto a las determinaciones de hechos basadas en *testimonio oral* que "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". Cónsono con la antedicha disposición reglamentaria, ha sido norma reiterada que "[e]n ausencia de error, prejuicio o

parcialidad, los tribunales apelativos no intervendr[emos] con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad que efectúe el Tribunal de Primera Instancia". *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009). Véase, además, *Barreto Nieves et al. v. East Coast*, 213 DPR 852, 889 (2024); *SLG Rivera-Pérez v. SLG Díaz-Doe et al.*, 207 DPR 636, 657 (2021). *Torres Vélez v. Soto Hernández*, 189 DPR 972, 990 (2013). Entretanto, precisa recordar que las decisiones judiciales están revestidas de una presunción de corrección. *Vargas v. González*, 149 DPR 859, 866 (1999).

Ahora bien, lo anterior no implica que las determinaciones del foro a *quo* no sean revisables o inmutables. Aunque respetables las determinaciones del juzgador de hechos, estas "no tienen credenciales de inmunidad frente a la función revisora de este Tribunal". *Vda. de Morales v. De Jesús Toro*, 107 DPR 826, 829 (1978). La intervención de un foro apelativo con la evaluación de la prueba testifical procederá "en casos en los que luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 918 (2016). Véase, además, *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012).

Igualmente podemos dejar sin efecto las determinaciones de hechos realizadas por el foro de primera instancia, siempre que "del examen de la totalidad de la evidencia [quedemos] definitiva y firmemente convencido[s] que un error ha sido cometido, como es el caso en que las conclusiones de hecho[s] están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Maryland Casualty Co. v. Quick Const. Corp.*, 90 DPR 329, 336 (1964). Recientemente, nuestro más Alto Foro expresó que "el error manifiesto ocurre cuando el foro apelativo queda

convencido de que se cometió un error, a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022).

Como parte de la naturaleza inherente de este foro apelativo intermedio, no celebramos juicios plenarios, ni presenciamos el testimonio oral de los testigos, ni dirimimos credibilidad, sino que contamos, de ordinario, con "récords mudos e inexpresivos". *SLG Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009). Aunque este Tribunal no tiene la facultad de evaluar el lenguaje corporal, expresiones o demás elementos subjetivos, sí nos encontramos en la misma posición del foro primario para evaluar la prueba documental o pericial que fundamentan las determinaciones de hecho. *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918; *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Para que proceda la revocación de un dictamen realizado por el foro primario, la parte "apelante tiene que señalar y demostrar la base para ello". Quien "cuestione una determinación de hechos realizada por el foro primario debe señalar el error manifiesto o fundamentar la existencia de pasión, perjuicio o parcialidad". *SLG Rivera Carrasquillo v. A.A.A.*, supra, pág. 356.

### III.

Los peticionarios recurren ante nos, y solicitan que revoquemos la determinación del TPI-Carolina de denegar su petición *ex parte* sobre expediente de dominio, y decretar su cierre y archivo sin perjuicio. Alegan, en su recurso, que el Foro Primario se equivocó al no permitir la subsanación de elementos estatutarios, descartando, además, prueba consistente y no controvertida luego de haberle restado valor probatorio, sin tomar en consideración el carácter flexible de los procedimientos de jurisdicción voluntaria.

Arguyen, a su vez, que el Foro Recurrido erró al evaluar la prueba presentada sobre la posesión y adquisición de la finca objeto de la petición bajo un estándar riguroso y preciso propio de un procedimiento contencioso adversativo. *Les asiste la razón.*

Según expuesto, nuestro ordenamiento registral permite que una persona que carezca de título inscribible de dominio logre la inscripción de una finca en el Registro de la Propiedad. Para esto, la persona interesada puede acudir ante un tribunal mediante una petición de expediente de dominio, y así obtener una resolución judicial por la cual se declare justificado a su favor el dominio sobre la finca que se pretende inscribir. No obstante, esta resolución estará supeditada a que el promovente cumpla con ciertos requisitos sustantivos y procesales expresamente establecidos en el Artículo 185 de la Ley 210-2015.

Salvo las instancias en que nuestro Tribunal Supremo se ha expresado de manera contraria, los requisitos del procedimiento de expediente de dominio son de cumplimiento estricto. Esto pues, por su naturaleza *ex parte*, y en ausencia de oposición formal a la solicitud por personas debidamente citadas, el promovente podría tener una oportunidad razonable de corregir las deficiencias de su petición para cumplir con las exigencias estatutarias, sin que se le sancione severamente con la desestimación.

Por otro lado, debemos resaltar que el expediente de dominio tiene el fin exclusivo de declarar justificado el dominio para la obtención de un título inscribible, y de ninguna manera establece derechos definitivos sobre la finca en cuestión. Nada impide que posteriormente se celebre un juicio ordinario y contencioso por aquel que cuestione el título obtenido por el promovente.

En el caso ante nos, los peticionarios presentaron su petición ante el Foro Recurrido con el fin de que se declarara justificado el dominio sobre una finca presuntamente ubicada en el Municipio de

Carolina, la cual alegaban haber ocupado de manera pública, pacífica, continua y a título de dueños por alrededor de cinco (5) décadas. A lo largo del procedimiento, estos consignaron las alegaciones sustantivas que requiere el Artículo 185 de la Ley 210-2015, y cumplieron con los requisitos procesales de notificación al acreditar *haber diligenciado la citación a todas las personas que la dicha Ley registral exige.*

En lo pertinente al recurso de epígrafe, los peticionarios suplieron un plano y una certificación de mensura preparada por el agrimensor Roberto Santiago Dueño, de la cual surge la descripción exacta de la propiedad, *detallando las colindancias y la cabida de la finca en el sistema métrico decimal.* Posteriormente, sometieron una declaración jurada del peticionario Núñez-Aquino, en la cual este informó haber recibido la finca como regalo de su antiguo patrono desde hace más de cinco (5) décadas, desde cuando ha poseído en la forma prescrita por ley para este tipo de acción.

Un examen sosegado del expediente, apunta a que los peticionarios cumplieron sustancialmente con los requisitos sustantivos y procesales que la Ley 210-2015 establece para este procedimiento, y no obtuvieron objeción alguna de las personas y entidades gubernamentales debidamente citadas. A pesar de esto, surge de la Resolución recurrida que el TPI-Carolina se rehusó a justificar el dominio a favor de los peticionarios debido a que le restó credibilidad al testimonio del peticionario Núñez-Aquino con relación al tiempo y la forma en que poseyó la finca, pues entendió que su credibilidad era esencial para otros requisitos de la petición. De igual manera, basó su determinación en la falta de congruencia en la demarcación territorial donde ubicaba la finca de los peticionarios.

Es de notar que toda la evidencia presentada ubicaba la finca objeto de la acción en el Municipio de Carolina. Sin embargo, no fue

hasta que el Municipio de Carolina alertó que las coordenadas del plano ubicaban la finca fuera de su demarcación territorial que se advino en conocimiento de tal error. A estos efectos, los peticionarios citaron al Municipio de Trujillo Alto, quien compareció y expresó conformidad con tal solicitud, por lo que el Foro Primario continuó con los procedimientos.

Debemos señalar que, salvo esta incongruencia con la demarcación territorial, la finca fue identificada correctamente respecto a sus colindancias y a su cabida en el sistema métrico decimal, y se pudo establecer que la misma ha sido ocupada por los peticionarios por más de cinco (5) décadas de manera pública, pacifica e ininterrumpidamente. A estos efectos, debemos señalar que la falta de competencia por demarcación territorial no precluye necesariamente la dilucidación de este tipo de procedimientos. La propia ley expresamente prevé este tipo de errores, cuyo único efecto resulta ser la transferencia a la sala competente.

Ante esto, somos del criterio de que la incongruencia entre las demarcaciones territoriales no es fundamento para archivar una petición de expediente de dominio, máxime cuando no ha surgido oposición durante el mismo, y cuando la misma es susceptible de enmienda o corrección con prueba adicional o posterior. Por tal razón, el Foro Recurrido erró al no permitir que los peticionarios enmendaran tal descripción para conformarlo a la realidad extraregistral.

En cuanto al estándar utilizado por el TPI-Carolina para evaluar la prueba relacionada a la forma de adquisición y el tiempo de posesión señalado, debemos nuevamente resaltar que el expediente de dominio es un procedimiento de *jurisdicción voluntaria*, cuya naturaleza solamente cesa cuando una parte con interés debidamente citada se opone a dicha petición. Los peticionarios diligentemente proveyeron la evidencia requerida, y el

Foro Recurrido tuvo oportunidad de corroborarla durante el juicio en su fondo mediante el testimonio de los testigos presentados.

Surge de la transcripción sometida por los peticionarios que, en efecto el peticionario Núñez-Aquino demostró una discrepancia entre tiempo de posesión consignado en la declaración jurada y su testimonio en juicio. Sin embargo, ambos plazos corroboran que el peticionario ha poseído la finca de manera pública, pacífica, continua y a título de dueño por más de cuatro (4) décadas sin oposición de persona alguna. Iguales condiciones surgen para corroborar que dicho peticionario adquirió el predio de Porfirio Torres, alegado dueño anterior. En norma firmemente establecida que, el hecho de que un testigo incurra en ciertas contradicciones no justifica el descarte del resto de su declaración cuando nada increíble o improbable surge del testimonio, y máxime cuando puede armonizarse con el resto de la prueba. *Pueblo v. De Jesús Mercado*, 188 DPR 467, 477 (2013); *Pueblo v. Chévere Heredia*, 139 DPR 1, 15 (1995).

El Foro Recurrido interpretó que la credibilidad del apelante era requisito indispensable para los demás elementos requeridos por el Art. 185 de la Ley 210-2015. Sin embargo, nada en la precitada Ley establece expresamente tal condición para el cumplimiento de sus requisitos, por lo que el Foro Primario no tiene facultad para enmendar o establecer exigencias adicionales. Véase, *Ex parte Román, Nieves*, supra.

En este caso, los peticionarios presentaron toda la prueba requerida, y citaron conforme la normativa vigente a las partes con interés y a las entidades que impone la ley, quienes además comparecieron y expresaron conformidad. Es decir, durante la pendencia de la acción de epígrafe, nadie ha expresado oposición alguna a que se le declare justificado el dominio a los peticionarios. Aun más, el testimonio vertido ante el TPI-Carolina, aunque con

leves incongruencias, fue consistente en cuanto a las deficiencias señaladas.

En un procedimiento de naturaleza flexible y no contenciosa, en la cual los peticionarios han cumplido sustancialmente con las exigencias estatutarias, no hallamos causa por la cual se le deba denegar la oportunidad de corregir las deficiencias señaladas. Somos del criterio que, solo en caso de estos no poder corregir a satisfacción del tribunal las deficiencias señaladas, se habilita el archivo de su petición. Recordemos, que la finalidad de este procedimiento es justificar el dominio sobre una propiedad que no consta inscrita por la carencia de título fehaciente, lo cual no impide su cuestionamiento en procedimientos posteriores para declarar derechos definitivos. Ante todo, nos resulta forzoso concluir que los errores señalados por los peticionarios fueron cometidos.

**IV.**

Por los fundamentos que anteceden, *expedimos el recurso solicitado, revocamos* la "*Resolución*" recurrida, *y devolvemos* el caso al Foro Primario, para la continuación de los procedimientos en conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones