ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| RAFAEL QUIÑONES MARTÍNEZ Y OTROS | TA2025CE00420 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez |
|---|---|---|
| *Ex parte* | | Caso Núm.: MZ2025CV01237 |
| | | Sobre: Expediente de dominio y otros |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de octubre de 2025.

La parte peticionaria, conformada por los esposos Sr. Rafael Quiñones Martínez y Sra. Teresa Morales Ruscalleda (matrimonio Quiñones Morales), acude ante nos mediante un auto discrecional de *certiorari*. Plantea que no tiene que proveer cierta documentación como parte de una petición de expediente de dominio, según ordenada por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). En particular, solicita la revocación de los incisos (2) y (3) de la *Orden* emitida el 22 de julio de 2025, notificada al día siguiente, en la que el TPI ordenó a los comparecientes a proveer un plano de mensura en formato de documento portátil (PDF, por sus siglas en inglés), una certificación de mensura y una resolución de la Oficina de Gerencia de Permisos (OGPe).

Por los fundamentos que expondremos a continuación, anticipamos que expedimos el recurso discrecional de *certiorari* y revocamos parcialmente la *Orden* recurrida.

**I.**

La causa presente se inició el 22 de julio de 2025, ocasión en que el matrimonio Quiñones Morales instó un recurso jurado *ex parte* de

expediente de dominio, con el fin de inmatricular el predio descrito a continuación:[1]

> URBANA: Solar radicado en el barrio Dulces Labios del término municipal de Mayagüez, Puerto Rico. Con una cabida superficial de NOVENTA Y SEIS PUNTO CERO CINCUENTA Y DOS (96.052) METROS CUADRADOS; linda al Norte con otro solar del propio señor Rafael Quiñones; al Sur con la calle Tablón; al Este con Cándida Negrón Figueroa de Rodríguez y al Oeste con propiedad de Rosa Cándida Martínez, ahora propio señor Rafael Quiñones. En dicho solar existe una casa de bloques, hormigón y madera de dos plantas.[2]

Al día siguiente, el TPI notificó la *Orden* que nos atañe para requerir varios documentos.[3] Entre éstos:

. . . . . . . .

> (2) Proveer Plano de Mensura (Formato PDF) y Certificación de Mensura de Agrimensor cumpliendo con los requisitos Artículo 197, Ley 210-2015.[4]

> (3) Provee[r] Resolución aprobada por OGPE.

. . . . . . . .

En torno a dichos requerimientos, los peticionarios solicitaron al TPI que reconsiderara el mandato.[5] Explicaron que la parte peticionaria obtuvo el justo título del inmueble por virtud de un documento privado.[6] Esto, en referencia a la *Cesión de acciones y derechos*, que suscribieron las declarantes Elena Pardo Menar,[7] Juana Martínez y Cándida Martínez[8] el **19 de junio de 1977**. Las alegadas herederas de los

---

[1] *Petición*, Anejo 4 del recurso de *certiorari*.

[2] Catastro número 233-037-260-22.

[3] *Orden*, Anejo 3 del recurso de *certiorari*.

[4] La disposición citada está bajo el Subtítulo C de la Ley Núm. 210-2015, que versa sobre la rectificación de cabida. El referido articulado establece que "[l]a acreditación de la mensura de una finca se hará mediante la certificación de mensura juramentada ante notario expedida por el agrimensor licenciado que la efectuó. Deberá hacer constar los nombres y modo de citación de los propietarios colindantes. Se entenderá por agrimensor licenciado el profesional autorizado por la Ley Núm. 173 de 12 de agosto de 1988, según enmendada, y la Ley Núm. 319 de 15 de mayo de 1938, según enmendada".

[5] *Moción en cumplimiento de Orden y Reconsideración*, Anejo 2 del recurso de *certiorari*.

[6] Véase el Anejo en la entrada 3 del caso MZ2025CV01237 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[7] Se indicó que la señora Pardo Menar era sobrina del causante Pardo Rosalí; véase, Anejo 4 del recurso de *certiorari*, a la pág. 2, acápite 10.

[8] Se indicó que las hermanas Martínez eran hijas de la señora Aguilar y que el peticionario es hijo de Juana Martínez; véase, Anejo 4 del recurso de *certiorari*, a la pág. 2, acápites 9 y 10.

causantes Alejandro Pardo Rosalí y Ricarda Aguilar, respectivamente, expresaron en la declaración jurada 28095 su deseo de ceder gratuitamente al señor Quiñones Martínez una propiedad, valorada en $410.00, cuya descripción reproducimos *ad verbatim*:

> Solar de forma irregular que mide 24 pies 3 pulgadas[9] de frente por 13 pies[10] ~~de fondo~~ en su parte más estrecha, localizado en la calle Tablón saliendo a Echague de esta ciudad de Mayagüez, colindante por el Norte con la calle Echague; por el Sur con la calle Tablón; por el Este con Arcadia Morales y Carmen Rodríguez y por el Oeste con Cándida Rosa Martínez y Pedro Toro. --------------------------
> Mide 86 pies[11] de largo. ------------------------------------------

Indicó la parte peticionaria que, el **12 de junio de 1979**, el ingeniero civil Jorge M. Noguera (licencia 1947) realizó una mensura del predio, identificado como **solar B** en el plano, el cual resultó con una cabida de **96.052** metros cuadrados.[12]

En apoyo a la reconsideración, además, los peticionarios reiteraron que el predio en cuestión fue segregado en 1902 y adquirido en 1944 por los causantes Pardo Rosalí y Aguilar. Para una mejor comprensión, resumimos en orden cronológico los negocios jurídicos previos a la declaración jurada 28095 de 1977:

Mediante la Escritura Pública 80 de **3 de febrero de 1902** —de una finca matriz con una cabida de 992 metros cuadrados —[13] sita en el barrio Sábalos de Mayagüez, se adjudicó en división de bienes a favor de Román Aráez y Cristy un solar de 6 metros de frente y 14 metros de fondo, 84 metros cuadrados.[14] Luego, ese predio del barrio Sábalos fue

---

[9] Equivalente a 7.3914 metros aproximadamente.

[10] Equivalente a 3.9624 metros aproximadamente.

[11] Equivalente a 26.2128 metros aproximadamente.

[12] Véase el Anejo en la entrada 3 del caso MZ2025CV01237 en el SUMAC.

[13] Colindancias por el Norte, con el camino número dos; por el Este, con la parcela adjudicada a Alfredo Cristy; por el Sur, con terrenos de María Ana Cristy; y por el Oeste, con una parcela adjudicada a Román Aráez y Ferrando.

[14] Colindancias por el Norte, con un solar perteneciente al causante Pardo Rosalí; por el Sur, con un callejón sin nombre; por el Este, con parte de la finca matriz vendida a Aurora Ramírez; y por el Oeste, con parte de la finca matriz y una parcela de Mariana Cristy.

vendido por Aráez y Cristy al causante Pardo Rosalí a cambio de $63.00, mediante la Escritura Pública 252 de **9 de mayo de 1921**.[15]

Entonces, el **25 de septiembre de 1942**, se otorgó la Escritura Pública 34, mediante la cual el causante Pardo Rosalí vendió el solar urbano del barrio Sábalos a David Mari Ramos y a Josefina Francisco de Mari. Dos años más tarde, por conducto de la Escritura Pública 3 de **5 de enero de 1944** y el precio de $200.00,[16] don David y doña Josefina vendieron el predio a los causantes Pardo Rosalí y Aguilar.

Los peticionarios adujeron que, de conformidad con el ordenamiento jurídico y su jurisprudencia interpretativa, era improcedente someter los documentos solicitados. En específico, con relación a la mensura, acotaron que se alegó la carencia de título y que de la prueba presentada surgía la cabida del predio expresada en el sistema métrico. En cuanto a la resolución de la OGPe, sostuvieron que la finca matriz no estaba inscrita; y de estarlo, la segregación se efectuó en 1902, es decir, previo al 4 de septiembre de 1944.

En respuesta, el 14 de agosto de 2025, notificada el día 19 del mismo mes y año, el TPI dictó una *Resolución* en la que declaró no ha lugar la solicitud de reconsideración y reiteró el cumplimiento de la *Orden* emitida. Inconforme, el 8 de septiembre de 2025, la parte peticionaria interpuso el recurso de *certiorari* que nos ocupa, en el que señaló la comisión de los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR PROVEER PLANO DE MENSURA EN FORMATO PDF Y CERTIFICACIÓN DE MENSURA DE AGRIMENSOR, PESE A QUE ESTE REQUISITO ES CONTRARIO A DERECHO.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR PROVEER RESOLUCIÓN APROBADA POR OGPE, PESE A QUE ESTE REQUISITO ES CONTRARIO A DERECHO.

---

[15] Véase el Anejo en la entrada 3 del caso MZ2025CV01237 en el SUMAC.

[16] Véase el Anejo en la entrada 3 del caso MZ2025CV01237 en el SUMAC. Con una casa de madera semialta; y las mismas colindancias esbozadas en la nota al calce 13, salvo que, en lugar de Aurora Ramírez, esta descripción nombra a Áurea Ramírez.

## II.

La Ley Núm. 210 de 8 de diciembre de 2015, *Ley del Registro de la Propiedad Inmobiliaria*, 30 LPRA sec. 6001 *et seq.* (Ley Núm. 210-2015), y el Reglamento Núm. 8814 de 31 de agosto de 2016, *Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria*, regulan todo lo concerniente al procedimiento de expediente de dominio. El trámite de expediente de dominio suele ser de jurisdicción voluntaria o *ex parte* y se utiliza en los casos en que el propietario adolece de un título inscribible de dominio. *Román, Nieves, Ex parte*, 2025 TSPR 45, 215 DPR __ (2025). Si el promovente cumple con los requisitos estatuidos en la Ley Núm. 210-2015, el tribunal podrá declarar justificado el dominio de la finca que se pretende inscribir. *Id.* Claro está, este mecanismo **no puede utilizarse para declarar derechos**, ya que "no equivale a una acción declaratoria de usucapión". Art. 191 de la Ley Núm. 210-2015, 30 LPRA sec. 6297. A esos efectos, un trámite de expediente de dominio **no adquiere carácter de cosa juzgada** y nada impide que pueda realizarse un juicio declarativo posterior a instancia de quien se considere perjudicado, mediante una acción ordinaria contradictoria de dominio. *Román, Nieves, Ex parte, supra*; *Torres, Cabrera v. Ex parte*, 2025 TSPR 5, 215 DPR __ (2025); *Rodríguez v. Registrador*, 75 DPR 712, 732 (1953); *Benítez v. Registrador*, 71 DPR 563, 568 (1950).

En cuanto a los requisitos formales de la petición jurada, el primer inciso del Artículo 185 de la Ley 210-2015, 30 LPRA sec. 6291, dispone:

> Todo propietario que carezca de título inscribible de dominio, podrá inscribirlo si cumple con los siguientes requisitos:
>
> 1. Presentará un escrito jurado en la sala del Tribunal de Primera Instancia correspondiente al lugar en que radiquen los bienes, o en la de aquél en que radique la porción de mayor cabida cuando se trate de una finca que radique en varias demarcaciones territoriales. Si se presenta el escrito ante una sala sin competencia, el tribunal de oficio, lo trasladará a la sala correspondiente. El escrito contendrá las siguientes alegaciones:

a. Nombre y circunstancias personales del promovente y de su cónyuge, si lo tuviera, al momento de adquirir la propiedad y al momento de hacer la solicitud, si hubiera alguna diferencia.

b. **La descripción exacta de la propiedad con sus colindancias y cabida de acuerdo a los títulos presentados. De haberse practicado alguna mensura, deberá contener la cabida y colindancias que hayan resultado de la misma**. Si la finca se formó por agrupación, deberán además, describirse individualmente las fincas que la integraron, y **si fue por segregación se describirá la finca principal de la cual se separó**.

c. Número de Catastro según aparece en el Centro de Recaudación de Ingresos Municipales.

d. **Expresión de que la finca**, así como las fincas constituyentes en caso de tratarse de una agrupación, **o la finca de la que proviene si se trata de una segregación, no constan inscritas en el Registro de la Propiedad**.

e. Una relación de las cargas que gravan la finca por sí o por su procedencia. En caso de no existir cargas, se expresará que está libre de cargas.

f. **Una relación de los anteriores dueños conocidos con expresión de las circunstancias personales del inmediato anterior dueño**.

g. **El modo en que adquirió del inmediato anterior dueño**.

h. **El tiempo que el promovente y los dueños anteriores han poseído la propiedad de manera pública, pacífica, continua y a título de dueños**.

i. **El hecho de que la finca**, o en caso de agrupación, las que la componen, **mantuvieron la misma cabida y configuración durante los términos que disponen los Artículos 1857 y 1859 del Código Civil de Puerto Rico[17] para que operen los efectos de la prescripción adquisitiva. Si la finca resulta ser una segregación de una finca de mayor cabida que consta inscrita, la segregación tiene que haber sido aprobada por la agencia gubernamental correspondiente mediante plano de inscripción**. No constituirá justo título a los efectos de este Artículo, un título de dominio sobre una porción *pro indivisa* en una finca no segregada, ni el título que recae sobre una finca segregada de una finca inscrita en el registro.

j. El valor actual de la finca.

k. Las pruebas legales que se dispone presentar.

l. Las demás alegaciones que en derecho procedan en cada caso. (Énfasis nuestro).

---

[17] Equivalente al Artículo 788 del Código Civil de 2020, 31 LPRA sec. 8032.

A raíz del alto interés público que representan estos requisitos esenciales, el Tribunal Supremo ha acotado que son de **cumplimiento estricto**, independientemente de que el procedimiento sea de naturaleza voluntaria o adversativa. *Román, Nieves, Ex parte, supra.* Por supuesto, **los tribunales deben ceñirse a lo dispuesto en el Artículo 185 de la Ley Núm. 210**, *supra*, tanto para los requisitos sustantivos como para los procesales que interpela el procedimiento del expediente de dominio. *Id.*

### III.

En la causa de autos, en su **primer señalamiento de error**, la parte peticionaria aduce que el TPI incidió al ordenar, en el inciso (2) de la *Orden* impugnada, proveer un Plano de Mensura y una Certificación de Mensura realizada por un agrimensor, que cumpliera con los requisitos del Artículo 197 de la Ley 210-2015, sobre rectificación de cabida.

El Artículo 23 de la Ley Núm. 210-2015, 30 LPRA sec. 6038, establece en el inciso (A) (2) que la primera inscripción de toda finca expresará de forma abreviada, "[l]a naturaleza, situación y linderos de los inmuebles objeto de la inscripción, o a los cuales afecte el derecho que deba inscribirse, y sus **medidas superficiales expresadas en el sistema métrico decimal**". (Énfasis nuestro). A su vez, el Artículo 185 (1) (b) (i) de la Ley 210-2015, *supra*, según esbozado antes requiere en el inciso (b) "[l]a **descripción exacta de la propiedad con sus colindancias y cabida** de acuerdo a los títulos presentados". Añade que, de haberse practicado alguna **mensura**, ésta debe "contener la **cabida y colindancias** que hayan resultado de la misma". *Id.* Por igual, aun cuando el expediente de dominio no equivale a una acción de usucapión, el mismo articulado en el inciso (i) dispone la consignación en la petición del hecho de que la finca mantuvo "la **misma cabida y configuración** durante los términos que disponen los Artículos 1857 y 1859 del Código

Civil de Puerto Rico para que operen los efectos de la prescripción adquisitiva". (Énfasis nuestro). *Id.*

Cónsono con lo anterior, el alto foro ha resuelto que la acreditación de la cabida y de las colindancias de una finca independiente, mediante una certificación jurada de mensura expedida por un agrimensor licenciado, es **improcedente** si el promovente del expediente de dominio alegó que **carece de un título** y de la prueba presentada junto a la petición jurada surge alguna **mensura en la que conste la cabida y las colindancias en el sistema métrico decimal**. *Román, Nieves, Ex parte*, *supra.*

En esta causa, luego de relacionar los negocios jurídicos que precedieron al predio en cuestión hasta advenir poseedores, el matrimonio Quiñones Morales **alegó palmariamente que carecía de un título inscrito e inscribible en el Registro de la Propiedad**.[18] Ello así, porque la declaración jurada 28095 no cumple con las formalidades exigidas por el ordenamiento para que se reconozca la transmisión de dominio allí plasmada. Además, el 5 de agosto de 2025, los peticionarios presentaron ante el TPI una *Moción en cumplimiento de Orden y Reconsideración*, a la que unieron un documento que se remonta al 12 de junio de 1979, intitulado *Plano* de 2 *solares del Sr. Rafael Quiñones Martínez sitos en calles Tablón Nº 223 y Echague, Bo. Dulces Labios, Mayagüez P.R.* Según reseñamos, el Plano de 1979 fue realizado por el ingeniero civil Jorge M. Noguera. Del mismo, **se desprende claramente las dimensiones en el sistema métrico decimal del Solar B del que se solicitó la declaración justificada del dominio; arrojando una cabida de 96.052 metros cuadrados**.

Por tanto, toda vez que este procedimiento no se trata de una rectificación de cabida según estatuida en el Artículo 197 de la Ley Núm. 210-2015, es razonable colegir que el matrimonio Quiñones Morales está

---

[18] Véase, *Petición*, acápite 11, Anejo 4 del recurso de *certiorari*.

eximido de cumplir con el segundo inciso de la *Orden* recurrida, ya que la expresión de las colindancias y la cabida establecida desde hace 46 años en el Plano de 1979 es suficiente. Es decir, primero, al alegar la carencia de un título; y segundo, con la presentación del Plano de 1979, en el que proveyeron la mensura de la finca independiente que pretenden inmatricular y en el que constan las colindancias del predio, los peticionarios satisficieron los requisitos exigidos.

En el **segundo señalamiento de error**, el matrimonio Quiñones Morales sostiene que el TPI erró al requerir en el inciso (3) de la *Orden* recurrida una resolución aprobada por la OGPe.

Como cuestión de umbral, debemos apuntar que, en nuestro ordenamiento jurídico, rige un sistema registral declarativo con eficacia confirmatoria. *DLJ Mortgage v. García Ramos*, 207 DPR 28, 43 (2021); L.R. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 3ra ed. rev. 2012, págs. 32-33. Como es sabido también, los derechos reales sobre inmuebles se constituyen, modifican, transmiten o extinguen, con eficacia jurídica, fuera del registro. Rivera Rivera, *op. cit.*, pág. 42. Asimismo, la inscripción es voluntaria; de ahí el axioma de que el registro no da ni quita derechos. En el caso del expediente de dominio, este procedimiento no declara derechos ni constituye cosa juzgada.

Por su parte, en conjunto, los incisos (b) y (d) del Artículo 185 de la Ley 210-2015, *supra*, indican en lo pertinente que, en la petición de expediente de dominio, se debe **describir la finca principal** de la que se separa el predio independiente, así como si la matriz **consta o no inscrita**. En el inciso (i) de la aludida disposición legal se dispone que, cuando "la finca resulta ser una **segregación de una finca de mayor cabida que consta inscrita**, la segregación tiene que haber sido **aprobada por la agencia gubernamental** correspondiente mediante plano de inscripción". (Énfasis nuestro).

En el caso del epígrafe, del tracto aludido en la Escritura Pública 252 de 1921, cuando el causante Pardo Rosalí compró el predio, no surge

si la finca principal de la cual se segregó el solar adjudicado a favor de Román Aráez y Cristy en 1902 estaba o no inscrita. No obstante, a los fines de la petición de expediente de dominio del título, ese hecho resulta irrelevante. Veamos.

De conformidad con la jurisprudencia vinculante, en aquellos casos en que la finca para la cual se solicita un expediente de dominio resulta ser una segregación de una **finca de mayor cabida que no está inscrita** no es necesario presentar la aprobación de tal segregación por la agencia gubernamental encargada de ello. En el caso contrario, esto es, **si la finca matriz estuviere inscrita**, tampoco es necesario satisfacer este requerimiento **si la segregación se realizó antes de 4 de septiembre de 1944**, fecha en que comenzó a exigirse este requisito. *Torres, Cabrera v. Ex parte, supra*. En estas instancias, compete evaluar el expediente de dominio solicitado tomando en consideración únicamente la finca sobre la cual se reclama dominio y obviar cualquier referencia a la finca matriz. *Id.*

En este caso, ciertamente hay constancia que el proceso de segregación y adjudicación del predio en cuestión aconteció el 3 de febrero de 1902, por virtud de la Escritura Pública 80. Por ello, aun cuando la finca matriz hubiera constado inscrita, la fecha de adjudicación de bienes es anterior al 4 de septiembre de 1944. A esos efectos, al matrimonio Quiñones Morales le asiste la razón en cuanto a que no procede la exigencia del tercer inciso de la *Orden* impugnada, toda vez que, aun cuando la finca principal estuviera inscrita, la segregación fue antes de 1944.

Por las razones expuestas, al palio de la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025), se justifica nuestra intervención para enmendar los errores cometidos. Véase, *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Somos del criterio que los incisos (2) y (3) de la *Orden* cuestionada no le son aplicación a los peticionarios,

conforme las alegaciones, circunstancias y la prueba presentada en la petición de expediente de dominio que nos ocupa.

**IV.**

Por los fundamentos expuestos, acordamos expedir el auto discrecional de *certiorari* y revocamos parcialmente la *Orden* impugnada. En consecuencia, se devuelve el caso ante la consideración del Tribunal de Primera Instancia para la continuación del procedimiento de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones